IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DYLAN MAHO,

      Plaintiff,

      v.                                                    Civ. No. 19-182 KK/SCY

ROSALIND HANKINS and HAVEN
SCOGIN,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANTS' MOTION TO DISMISS STATE CLAIMS[1]

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss State Claims Based on Tort Immunity and Statute of Limitations (Doc. 19) ("Motion"), filed June 24, 2019. Plaintiff filed a Response on July 26, 2019 (Doc. 24). Defendants filed a Reply on August 5, 2019 (Doc. 25). The Court, having reviewed the parties' submissions and the relevant law, and being otherwise fully advised in the premises, finds that the Motion is well taken and shall be **GRANTED**.

## BACKGROUND

For the purpose of ruling on Defendants' Motion, the Court accepts as true the following well-pleaded factual allegations from Plaintiff's Complaint and views them in the light most favorable to him. *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) ("[I]n reviewing a motion to dismiss, [the Court] accept[s] the facts alleged in the complaint as true and views them in the light most favorable to the plaintiff."). After pleading no contest to one misdemeanor and two fourth-degree felony counts of voyeurism, Plaintiff was sentenced to serve 364 days in the

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment in this case. (Docs. 11, 12.)

Metropolitan Detention Center's ("MDC") Community Custody Program ("CCP"). (Doc. 1 at ¶ 2.) His Plea and Disposition Agreement ("Agreement") provided that upon completing his time in CCP, he would serve a three-year term of probation. (Doc. 1 at ¶¶ 2, 4.) Plaintiff was orally sentenced on December 11, 2014, but judgment was not entered until April 6, 2015. (Doc. 1 at ¶¶ 17, 21.)

Shortly after Plaintiff was orally sentenced, Defendant Hankins and Defendant Scogin ("Defendants"), probation officers with the New Mexico Probation and Parole Division of the New Mexico Corrections Department, "placed him on probation" in violation of the terms of the Agreement and the sentence announced on December 11, 2014. (Doc. 1 at ¶¶ 5, 76, 123, 124.) Defendants not only prematurely placed Plaintiff on probation but also wrongly placed Plaintiff in the sex offender probation program, "an intensive supervision program with far greater restrictions on liberty than the standard conditions imposed for ordinary probation[.]" (Doc. 1 at ¶¶ 6-8.) As a result of a condition of sex offender probation that prohibited him from living within a certain distance of a school, Plaintiff was forced to move out of the house he owned and was also prohibited from living with his roommate or at his aunt's house. (Doc. 1 at ¶¶ 101, 111.) He was also deprived of contact with his son, who was six years old at the time, because of the specific conditions of sex offender probation. (See Doc. 1 at ¶¶ 14, 27, 53, 105, 113.)

On January 23, 2015, prior to entry of his judgment and sentence, Defendants sought revocation of Plaintiff's probation based on an allegation that he violated the conditions of his probation by spending time with his minor son. (Doc. 1 at ¶¶ 10, 12, 14.) On March 2, 2015, Plaintiff was arrested and incarcerated at MDC on Defendants' orders. (Doc. 1 at ¶ 13.) Plaintiff was held without bond until he was released from MDC on December 15, 2015. (Doc. 1 at ¶ 28.) On January 4, 2016, Defendants again sought revocation of Plaintiff's probation based on "an

alleged technical violation" of his sex offender probation conditions. (Doc.1 at ¶ 32.) Plaintiff was ordered to be held without bond on January 28, 2016. (Doc. 1 at ¶ 33.) On March 7, 2016, the New Mexico Court of Appeals held that the state district court lacked the authority to revoke Plaintiff's probation because Plaintiff "was not on probation at the time that he allegedly violated probation" and, therefore, reversed the state district court's 2015 revocation of Plaintiff's probation. *State v. Maho*, 2016 WL 1546346, at *1, 3 (N.M. Ct. App. March 7, 2016). (Doc. 1 at ¶ 35.) Thereafter on March 14, 2016, Defendants issued an addendum to their violation report, alleging additional technical violations of probation by Plaintiff. (Doc. 1 at ¶ 38.) On July 6, 2016, the state district court issued an order dismissing the State's motions to revoke Plaintiff's probation. (Doc. 1 at ¶ 48.) Plaintiff was released from MDC on July 20, 2016. (Doc. 1 at ¶ 52.)

On March 5, 2019, Plaintiff filed his Complaint in this matter bringing, *inter alia*, state-law claims for (1) false imprisonment, (2) malicious abuse of process, (3) intentional infliction of emotional distress ("IIED"), and (4) loss of consortium. (Doc. 1 at 25-28.) Defendants have moved to dismiss those claims with prejudice under Federal Rule of Civil Procedure 12(b)(6) under either of two theories: that (1) the claims are time-barred under the New Mexico Tort Claims Act's ("NMTCA" or "the Act") two-year statute of limitations, or (2) Defendants are immune from liability under the NMTCA. (Doc. 19.) Defendants argue that Plaintiff's state-law claims accrued no later, though arguably sooner, than the date when he was released from any wrongful incarceration allegedly occasioned by Defendants' acts. (Doc. 19 at 4.) Defendants contend that even construing Plaintiff's allegations in the light most favorable to him, the latest Plaintiff's claims could have accrued was December 31, 2016,[2] meaning his state-law claims filed more than

---

[2] Defendants arrive at this date based on Plaintiff's general opening allegation that he was wrongfully incarcerated "in 2015 and 2016" and allow for the latest date in 2016 of December 31, 2016. As noted above, Plaintiff's Complaint identifies July 20, 2016 as the latest date on which he alleges he suffered wrongful incarceration caused by Defendants.

two years later on March 5, 2019 are untimely. (Doc. 19 at 4-5.) Alternatively, Defendants argue that because they are probation officers, the NMTCA's waiver of immunity for "law enforcement officers" does not apply to them as a matter of law, meaning they remain immune from suit. (Doc.19 at 3-4.)

In response to Defendants' statute-of-limitations argument, Plaintiff states, "Mr. Maho's sentence extended to September 31 [sic], 2017. Accordingly, the filing of the complaint [o]n March 5, 2019 falls within the two-year statute of limitations on which Defendants rely." (Doc. 24 at 1.) The Court understands Plaintiff to argue that none of his state-law claims accrued until his sentence in his underlying criminal case ended. Regarding Defendants' immunity argument, Plaintiff argues that at the very least, there is a factual question as to whether Defendants fall within the NMTCA's definition of "law enforcement officer," making dismissal under Rule 12(b)(6) premised on immunity improper. (Doc. 24 at 3-4.)

## ANALYSIS

**I.     Standard for Dismissing Claims Under Rule 12(b)(6)**

Under Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 455, 570 (2007)). "[R]elief must follow from the facts alleged[,]" *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008), which the Court construes "in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). Because "[a] plaintiff may not sue a governmental entity of New Mexico or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions listed

in the NMTCA[,]" *Hunt v. Central Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1193 (D.N.M. 2013), dismissal under Rule 12(b)(6) is proper for any claims that do not fall within a waiver of immunity under the NMTCA. *See Williams v. Bd. of Regents of the Univ. of N.M.*, 20 F. Supp. 3d 1177, 1187 (D.N.M. 2014) (stating that "if no specific waiver can be found in the NMTCA, a plaintiff's complaint against the governmental entity or its employees must be dismissed"). Additionally, "[a] statute of limitations defense may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (alteration and internal quotation marks omitted).

**II.  Whether Defendants come within the NMTCA's waiver of immunity for "law enforcement officers" cannot be decided on Defendants' Motion to Dismiss.**

Defendants contend that because they are probation officers, they are categorically immune from liability. (Doc. 19 at 3; Doc. 25 at 3.) Citing *Vigil v. Martinez*, 1992-NMCA-033, ¶ 20, 113 N.M. 714, 832 P.2d 405, and *Trask v. Franco*, 446 F.3d 1036, 1047-48 (10th Cir 2006), they argue that "[s]tate and federal case law clearly hold that Probation Officers are immune from liability for torts." (Doc. 25 at 3.) Plaintiff first counters that probation officers are "analogous" to detention center directors, for whom the New Mexico Court of Appeals has held that immunity is waived as a matter of law. (Doc. 24 at 2, citing *Abalos v. Bernalillo Cnty. Dist. Attorney's Office*, 1987-NMCA-026, ¶ 29, 105 N.M. 554, 734 P.2d 794.) Plaintiff alternatively argues that whether Defendants fall within the NMTCA's waiver of immunity for "law enforcement officers" presents a question of fact that cannot be decided on Defendants' Motion to Dismiss. (Doc. 24 at 3-4.) The Court agrees with the latter of Plaintiff's arguments.

Initially, the Court acknowledges that New Mexico courts have consistently affirmed grants of summary judgment for probation officers who are sued under the NMTCA on the basis

5

that they were not "law enforcement officers" under the Act and were, therefore, immune from liability. *See Rayos v. State ex rel. N.M. Dep't of Corr., Adult Probation & Parole Div.*, 2014-NMCA-103, ¶¶ 1, 26, 27, 336 P.3d 428 (affirming the district court's grant of summary judgment in favor of the defendant probation officers and holding, based on the record before it, that the district court did not err in ruling that the probation officers in that case were not law enforcement officers); *Vigil*, 1992-NMCA-033, ¶¶ 14, 20 (construing the district court's ruling on the defendant probation officers' motion to dismiss as a motion for summary judgment where the defendants relied on, and the plaintiff did not object to, an affidavit by one of the defendants attesting to his principal duties, and holding that the district court properly ruled that the probation officers in that case were not law enforcement officers). And as Defendants point out, the Tenth Circuit, applying New Mexico law, has also affirmed a grant of summary judgment for probation officers based on the NMTCA's lack of a waiver for probation officers. *Trask*, 446 F.3d at 1047-48 (citing *Vigil*, 1992-NMCA-033, for the proposition that "[t]he New Mexico Court of Appeals has made it clear that probation officers are 'not law enforcement officers under Section 41-4-3(D) and therefore the waiver in Section 41-4-12 does not apply to them[]'"). However, the Court does not read the foregoing cases as compelling the conclusion that all tort claims brought under the NMTCA against New Mexico probation officers must be dismissed under Rule 12(b)(6) because they can never state a claim upon which relief may be granted. That is particularly so given (1) the way in which "law enforcement officer" is defined under the NMTCA, (2) New Mexico case law interpreting how to determine whether a particular defendant's immunity has been waived under Section 41-4-12, and (3) the nature of the claims and allegations contained in Plaintiff's Complaint.

The NMTCA waives immunity for injuries caused by "law enforcement officers" who commit specified acts. N.M. STAT. ANN. § 41-4-12. Under the NMTCA, "law enforcement officer" is defined as:

> a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order[,] or to make arrests for crimes, or members of the national guard when called to active duty by the governor[.]

N.M. STAT. ANN. § 41-4-3(D) (2015). Importantly, whether a public employee, including a probation officer, falls within the definition of "law enforcement officer" depends not on his or her place of employment or job title but rather on what that employee's principal duties are under law. *See Anchondo v. Corr. Dep't*, 1983-NMSC-051, ¶¶ 10, 100 N.M. 108, 666 P.2d 1255 (explaining that "[t]o determine whether positions are of a law enforcement nature, this Court will look at the character of the principal duties involves, those duties to which employees devote the majority of their time" and stating that "[t]he fact that a person is employed at the penitentiary is not sufficient to establish that his job is one in law enforcement"); *Rayos*, 2014-NMCA-103, ¶ 9 ("[W]e must determine the duties upon which the employee spends the majority of his or her time (principal duties) and consider the character of those principal duties against the admittedly amorphous standard of the duties and activities traditionally performed by law enforcement officers." (internal quotation marks omitted)). Because "not all duties of public employees are enumerated in a statute or regulation[,]" courts called upon to determine the applicability of Section 41-4-12's waiver consider additional sources, including departmental job descriptions and affidavits, in determining whether a public-employee defendant's immunity has been waived. *Rayos*, 2014-NMCA-103, ¶ 8. "Determination in each case is fact specific, but informed by a practical, functional approach as to what law enforcement entails today." *Coyazo v. State*, 1995-

NMCA-056, ¶ 18, 120 N.M. 47, 897 P.2d 234. As the New Mexico Court of Appeals has explained, "[i]t may well be that changing circumstances, such as prison overcrowding and increased use of probation and parole as alternatives to incarceration, the changing demographic of the probation and parole population, and [the New Mexico] Legislature's finding that sex offenders have high rates of recidivism[,] have or will have a significant impact on the principal duties of probation and parole officers." *Rayos*, 2014-NMCA-103, ¶ 25.

On the record before it, the Court cannot say that under no set of facts could Plaintiff establish that Defendants fall within the NMTCA's definition of "law enforcement officer." Plaintiff's allegations generally relate to a period during which Plaintiff's legal status was unclear: while he had entered a plea of no contest, a written judgment and sentence had not been entered, meaning that his sentence had yet to commence and that he was serving neither his CCP sentence nor his term of probation. *See State v. Rushing*, 1985-NMCA-091, ¶¶ 6-7, 103 N.M. 333, 706 P.2d 875 (stating that "[a]n oral pronouncement is not a final judgment and is subject to change until reduced to writing" and rejecting the defendant's argument that he had commenced to serve his sentence at the time he reported to probation despite that a written judgment had not been entered); *Maho*, 2016 WL 1546346, at *1, 2-3 (finding the facts of Plaintiff's case to be similar to those in *Rushing* and holding that because Plaintiff "was not on probation at the time that he allegedly violated probation[,]" the district court was without authority to revoke his probation). As such, Defendants were in a different relationship with—and arguably had different duties with respect to—Plaintiff than the probation officers in the aforementioned cases. *See Trask*, 446 F.3d at 1039-40 (involving claims under the NMTCA for acts committed by a probation officer against a former probationer whom the probation officer did not know had been discharged early from probation); *Rayos*, 2014-NMCA-103, ¶¶ 3, 7 (involving claims against a third-party's probation officers for

negligence in supervising the probationer, who allegedly committed one or more of Section 41-4-12's specified intentional torts against the plaintiff[3]); *Vigil*, 1992-NMCA-033, ¶ 2 (involving claims against a third-party's probation officer for his alleged "gross negligence and callous indifference to supervision of [the p]robationer[,]" who committed a murder while on probation). Indeed, the gravamen of Plaintiff's Complaint challenges the propriety of Defendants' actions on the theory that Plaintiff could not, in fact, be on probation given the terms of his Agreement and the fact that judgment had not yet been imposed. Construed in the light most favorable to him, Plaintiff's allegations raise questions regarding in what capacity Defendants were "supervising" him, under what authority they were acting, and what their principal duties were under law. The Court is not convinced that Defendants' status as probation officers itself entitles them to dismissal at this juncture. Rather, the Court agrees with Plaintiff that development of the facts related to Defendants' principal duties at the time(s) of the alleged tortious conduct is necessary before the Court can determine, as a matter of law, whether Defendants' immunity has been waived. In the absence of the development of a factual record on this issue, the Court declines to dismiss Plaintiff's state-law claims against Defendants on the basis that their immunity has not been waived. The Court therefore proceeds to determine whether any other basis exists for dismissing those claims under Rule 12(b)(6).

### III. Plaintiff's claim for IIED does not fall within any waiver of immunity under the NMTCA.

Under Section 41-4-12 of the NMTCA:

The immunity granted pursuant to Section A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of

---

[3] New Mexico case law holds that Section 41-4-12's waiver of immunity "applies where a law enforcement officer's negligence causes a third party to commit one of the specified intentional torts." *Rayos*, 2014-NMCA-103, ¶ 7 (alterations and internal quotation marks omitted).

property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. STAT. ANN. § 41-4-12. As the New Mexico Court of Appeals has explained, Section 41-4-12 "waives immunity for *specified* intentional torts, violation of property rights, or deprivation of constitutional rights." *Rayos v. State ex rel. N.M. Dep't of Corr., Adult Probation and Parole Div.*, 2014-NMCA-103, ¶ 7, 336 P.3d 428 (emphasis added); *see Smith v. Village of Ruidoso*, 1999-NMCA-151, ¶ 28, 128 N.M. 470, 994 P.2d 50 (stating that a law enforcement officer can "be sued for personal or bodily injury resulting from assault, battery, or the *other enumerated tortious conduct* under . . . Section 41-4-12" (emphasis added)). Notably, it does not waive immunity for stand-alone claims of IIED. *See Romero v. Otero*, 678 F. Supp. 1535, 1540 (D.N.M. 1987) (stating that the NMTCA "does not waive the immunity of law enforcement officers for [IIED] standing alone as a common law tort" but noting that "[d]amages for emotional distress . . . may be recoverable as damages for 'personal injury' resulting from one of [Section 41-4-12's] enumerated acts"). Because Plaintiff's stand-alone claim for IIED does not fall within Section 41-4-12's waiver of immunity, it must be dismissed unless it states a claim under one of the NMTCA's other waivers.

In his Complaint, Plaintiff does not specify under which section(s) of the NMTCA he brings his state-law claims. (Doc. 1.) In his Response Brief, Plaintiff discusses only Section 41-4-12's waiver of immunity as providing a basis for those claims. (Doc. 24.) As just concluded, Section 41-4-12 does not waive immunity for claims of IIED. To the extent Plaintiff's Complaint could be construed as raising any of his claims under another of the NMTCA's waivers, the Court concludes that Plaintiff's IIED claim still fails to state a claim because the NMTCA's other waivers expressly apply to *negligent* conduct. *See* §§ 41-4-5 (waiving immunity for damages caused by

"the *negligence* of public employees while acting within the scope of their duties in the operation or maintenance of any motor vehicle, aircraft or watercraft" (emphasis added)), -6(A) (same for the operation or maintenance of buildings, parks, machinery, equipment, or furnishings), -7 (same for the operation of airports), -8 (same for the operation of certain public utilities and services), -9 (same for the operation of medical facilities), -10 (same for the provision of health care services), -11 (same for the construction and maintenance of highways and streets); *see also Smith*, 1999-NMCA-151, ¶ 28 (explaining that in addition to being sued for certain types of intentionally tortious conduct under Section 41-4-12, "[a] law enforcement officer, being a public employee, can be sued for negligent conduct" under Sections 41-4-5 and -6). By its very nature, IIED is a claim premised on intentional or reckless, not negligent, conduct. *See* N.M. CIV. UJI 13-1628 (providing that one of the elements to be proven to recover for IIED is that the defendant "acted intentionally or recklessly"). Because Plaintiff's IIED fails to state a claim under the NMTCA, and because the Court concludes that under no set of facts would Plaintiff be able to state a claim for IIED, it will be dismissed with prejudice. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." (citing *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1126 (10th Cir. 1997))); *Williams*, 20 F. Supp. 3d at 1187.

**IV.     Plaintiff has failed to state a claim for loss of consortium.**

Under New Mexico law, "a plaintiff who sues for loss of consortium damages must prove—as an element of loss of consortium damages—that the alleged tortfeasor caused the wrongful injury or death of someone who was in a sufficiently close relationship to the plaintiff, resulting in harm to the relationship." *Thompson v. City of Albuquerque*, 2017-NMSC-021, ¶ 14, 397 P.3d 1279. By its very nature, a claim for loss of consortium is premised upon the injury to a

relational interest based on harm suffered not by the claimant but by another party with whom the claimant has a sufficiently close relationship. *See id.* ¶¶ 9, 16 (explaining that "[l]oss of consortium damages are derivative in nature because they arise from a physical injury *upon another person*" and that "[t]he direct injury alleged by a loss of consortium claimant is one to a relational interest with *another who was physically injured*" (emphases added)); *Fitzjerrell v. City of Gallup ex rel. Gallup Police Dep't*, 2003-NMCA-125, ¶ 12, 134 N.M. 492, 79 P.3d 836 (explaining that loss a loss-of-consortium claim is "derivative of other injuries and not an injury in and of itself"). Indeed, New Mexico defines the elements of loss-of-consortium damages as:

> The emotional distress of _____ (*plaintiff*) due to the loss [of the society], [guidance], [companionship] and [sexual relations] resulting from the injury to _____ (*name of injured or deceased spouse or child of plaintiff*).

N.M. R. CIV. UJI 13-1810A.

Here, Plaintiff's loss-of-consortium claim is premised on his allegation that during the time he was falsely imprisoned (i.e., while *he* was suffering an alleged wrongful injury to *his* person), he "was no[t] able to have any contact with his son, resulting in loss of society and companionship with his son." (Doc. 1 at ¶ 141.) Plaintiff has not pled any facts that, even construed in the light most favorable to him, suggest that Defendants caused any injury to his son on which Plaintiff's loss-of-consortium claim could be based. *Cf. Thompson*, 2017-NMSC-021, ¶¶ 5, 15, 18 (explaining that loss-of-consortium plaintiffs "need only have pled sufficient facts to notify [the d]efendants about the complaint's general premise" and concluding that the children-plaintiffs in that case "sufficiently pled the underlying battery claim from which their claim for loss of consortium damages arose by alleging that [the d]efendants caused the deadly shooting of [their father]" to survive the defendants' motion to dismiss). Nor has Plaintiff brought a claim on behalf of his son for his son's loss of consortium based on Defendants' alleged false imprisonment of

Plaintiff. Plaintiff's loss-of-consortium claim as set forth in his Complaint fails to state a claim upon which relief may be granted and will, therefore, be dismissed.

## V. Plaintiff's state-law claims for false imprisonment and malicious abuse of process are untimely.

Under the NMTCA, "[a]ctions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death[.]" N.M. STAT. ANN. § 41-4-15(A) (1977). While the NMTCA's limitations period of two years applies to each of Plaintiff's state-law claims, the question of when each claim accrued—and thus when the statute of limitations began to run— differs depending on the nature of the claim. *Compare Maestas v. Zager*, 2007-NMSC-003, ¶¶ 8, 22, 141 N.M. 154, 152 P.3d 141 (adopting the discovery rule for medical malpractice claims brought under the NMTCA and holding that "[a] plaintiff's cause of action accrues when he or she understands the nature of his or her injury; that is, when the plaintiff knows or with reasonable diligence should have known of the injury and its cause"), *with Health Plus of N.M. v. Harrell*, 1998-NMCA-064, ¶¶ 11, 14, 125 N.M. 189, 958 P.3d 1239 (holding that the statute of limitations for a subrogation claim against a governmental entity begins to run on the date of the accident, not the date the entity settled the underlying claim without providing for a third party's subrogation rights).

To determine when Plaintiff's state-law claims for false imprisonment and malicious abuse of process accrued, the Court looks to New Mexico law.[4] *See Bistline v. Parker*, 918 F.3d 849, 877 (10th Cir. 2019) (explaining that "[w]ith respect to plaintiffs' state-based claims, we apply [the

---

[4] While Defendants correctly point out that accrual of a false-imprisonment claim under federal law is "clear" and occurs when the wrongful incarceration ends (Doc. 25 at 2), *see Wallace v. Kato*, 549 U.S. 384, 390 (2007) ("Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends." (internal quotation marks omitted)), federal law does not control the question of when a state-law claim accrued. Neither Defendants nor Plaintiff address accrual of each of Plaintiff's state-law claims under state law.

13

state's] statute of limitations"). "When the federal courts are called upon to interpret state law, the federal court must look to the rulings of the highest state court[.]" *Nelson v. United States*, 915 F.3d 1243, 1248 (10th Cir. 2019) (quotation marks omitted). However, where, as here, no such rulings exist, the Court "must endeavor to predict how that high court would rule." *Id.* (quotation marks omitted). It does so by "seeking guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Patterson v. PowderMonarch, LLC*, 926 F.3d 633, 637 (10th Cir. 2019) (alteration and quotation marks omitted). The Court begins its analysis "by giving proper regard to relevant rulings by other courts of the state because each ruling is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Beltran v. AuPairCare, Inc.*, 907 F.3d 1240, 1251 (10th Cir. 2018) (internal quotation marks omitted).

Here, the question is what the New Mexico Supreme Court would rule the New Mexico Legislature intended the phrase "the date of occurrence resulting in loss, injury or death" to mean vis-à-vis claims of (1) false imprisonment, and (2) malicious abuse of process. For the reasons that follow, the Court predicts that under New Mexico law, a cause of action for (1) false imprisonment accrues no later than the last date on which the claimant was falsely imprisoned, and (2) malicious abuse of process accrues no later than the date that process is favorably terminated, though likely accrues earlier, i.e., immediately upon improper use of process. In any event, the Court concludes that Plaintiff failed to bring his claims for false imprisonment and malicious abuse of process within the NMTCA's statute of limitations.

**A. Plaintiff's claim for false imprisonment accrued no later than the last date on which he alleges he was falsely imprisoned—July 20, 2016—and is thus time-barred.**

14

The Court predicts the New Mexico Supreme Court would rule that Plaintiff's claim for false imprisonment under the NMTCA accrued, at the latest, on the last date on which he alleges he was falsely imprisoned because that was the last "date of occurrence resulting in loss" attributable to Defendants' alleged false imprisonment of him. N.M. STAT. ANN. §41-4-15. Under New Mexico law, "[t]he tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so." *Santillo v. N.M. Dep't of Pub. Safety*, 2007-NMCA-159, ¶ 12, 143 N.M. 84, 173 P.3d 6. The New Mexico Court of Appeals has described the crime of false imprisonment—which shares the same essential elements of its civil counterpart, *see* N.M. STAT. ANN. § 30-4-3 (providing that the crime of false imprisonment "consists of intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so")—as "an ongoing offense, not one which is complete as soon as the requisite elements have occurred." *State v. Corneau*, 1989-NMCA-040, ¶ 22, 109 N.M. 81, 781 P.2d 1159.[5] That is because the "loss" or "injury" that occurs upon false imprisonment is a wrongful loss of liberty. Thus, so long as the loss continues to be suffered, the tort remains ongoing. But when that loss is no longer occurring, i.e., when the false imprisonment ends, the limitations period necessarily begins to run because there is no further "occurrence resulting in loss[.]" N.M. STAT. ANN. §41-4-15. Cf. *Wallace*, 549 U.S. at 390 ("'Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends.'" (quoting 2 H. Wood, Limitations of Actions § 187(d)(4), p.878 (rev. 4th ed. 1916)); *Mondragon v. Thompson*, 519 F.3d 1078, 1082-

---

[5] The Court acknowledges that this statement was made in a factually and legally distinguishable context. The Court nonetheless finds this description persuasive and consistent with many jurisdictions' treatment of false imprisonment as a continuing tort. *See Heron v. Strader*, 761 A.2d 56, 62 (citing cases from different jurisdictions that follow the rule that a false-imprisonment claim accrues "at the release from imprisonment, not at the termination of the proceedings by which the arrest occurred").

83 (10th Cir. 2008) (explaining that "false imprisonment ends . . . when the victim is released or when the victim's imprisonment becomes pursuant to legal process—when, for example, he is bound over by a magistrate or arraigned on charges" (internal quotation marks omitted) (citing *Wallace*, 549 U.S. at 390 (emphasis omitted))).

Plaintiff's claim of false imprisonment is premised on his allegations that from March 3 through December 15, 2015, and again from January 3 through July 20, 2016, he was wrongfully incarcerated following revocation of wrongly imposed probation.[6] (Doc. 1 at ¶¶ 1, 52-54.) Plaintiff alleges no "occurrence" that resulted in any loss or injury after July 20, 2016. Indeed, the latest date referenced anywhere in Plaintiff's Complaint—not just in connection with his false-imprisonment claim—is July 20, 2016. The first time any reference is made to a later point in time is in Plaintiff's Response to Defendants' Motion to Dismiss wherein he states that his "sentence extended to September 31 [sic], 2017." (Doc. 24 at 1.) However, Plaintiff's Complaint does not allege any facts suggesting that he was wrongfully incarcerated or otherwise falsely imprisoned at any time between when he was released on July 20, 2016 and when his sentence in his underlying case ended in September 2017. Because July 20, 2016 is the last date on which Plaintiff alleges he suffered a loss of liberty due to Defendants' alleged false imprisonment of him, that is the latest date of accrual of his false-imprisonment claim. And because he did not bring that claim within two years of the latest date of accrual, it is untimely as pleaded and will be dismissed.

**B.     Plaintiff's cause of action for malicious abuse of process accrued no later than March 14, 2016 (assuming the claim accrued immediately upon improper use of process) and no later than July 20, 2016 (assuming the claim accrued upon favorable termination of Defendants' improper use of process) and thus is time-barred.**

---

[6] Plaintiff alleges under his claim for False Imprisonment, "This happened in the State and District of New Mexico on various dates identified above from December 2014 to July 2016." (Doc. 1 at ¶ 131.) The Court notes that December 2014 is when Plaintiff alleges Defendants first wrongly placed him on probation. (Doc. 1 at ¶¶ 45, 46, 118.) However, the first date Plaintiff alleges he was wrongfully incarcerated based on an alleged violation of the wrongfully imposed probation was March 3, 2015. (Doc. 1 at ¶ 53.)

16

The elements of malicious abuse of process are "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19. District court decisions interpreting when a malicious-abuse-of-process claim accrues under New Mexico law have concluded that "[a] cause of action for malicious-abuse-of-process accrues immediately upon the improper use of process." *Mata v. Anderson*, 685 F. Supp. 2d 1223, 1254 (D.N.M. 2010) (citing other district court decisions). That is because "prior favorable termination is not an element of the malicious abuse of process tort, as it was for the former tort of malicious prosecution." *Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶ 14, 142 N.M. 150, 164 P.3d 31. The Court concludes that it need not predict whether the New Mexico Supreme Court would rule that a malicious-abuse-of-process claim accrues immediately upon the improper use of process or only upon the favorable termination of process. In either case, Plaintiff failed to bring a timely claim for malicious abuse of process.

Plaintiff alleges numerous dates on which he contends Defendants improperly "initiated or furthered judicial proceedings" against him and further alleges that Defendants "persisted in seeking" his incarceration "in spite of the fact that there was no lawful basis for their doing so, and in spite of his bringing this fact to their attention." (Doc. 1 at ¶¶ 133, 134.) The first date on which Plaintiff alleges Defendants improperly used process was December 11, 2014, the date they placed him on probation. (Doc. 1 at ¶ 76.) The next date is January 23, 2015 when they initiated revocation proceedings. (Doc. 1 at ¶¶ 10, 12.) The next date is March 2, 2015 when Defendants allegedly directed that Plaintiff be arrested for a technical violation of what Plaintiff contends were illegally imposed conditions of probation. (Doc. 1 at ¶ 13.) Plaintiff alleges that Defendants again, on April

17

28, 2015, improperly used process when they submitted an order to the state district court regarding an alleged technical violation of the illegally imposed probation conditions. (Doc. 1 at ¶ 24.) The next alleged improper use of process occurred on January 4, 2016 when, according to Plaintiff, Defendants again had Plaintiff arrested and placed in custody. (Doc. 1 at ¶ 30.) The final date on which Plaintiff alleges Defendants improperly used process was March 14, 2016. (Doc. 1 at ¶ 38.) According to Plaintiff, on that date Defendants "issued an addendum to their violation report . . . alleging technical violations of the illegally-imposed probation conditions" despite that the New Mexico Court of Appeals held on March 7, 2016 that Plaintiff was not supposed to be on probation in the first place. (Doc. 1 at ¶¶ 35, 38.) Plaintiff does not allege any improper use of process by Defendants after March 14, 2016.[7]

Even assuming that a malicious-abuse-of-process claim does not accrue under New Mexico law until the proceeding originally initiated through the improper use of process has successfully terminated in the would-be plaintiff's favor, Plaintiff's cause of action is still untimely as pleaded. Under the facts alleged by Plaintiff, favorable termination of any improper use of process by Defendants occurred on July 6, 2016. By Plaintiff's own allegations, it was on that date that "Judge Jewell issued an order dismissing the State's motions to revoke Plaintiff Maho's probation." (Doc. 1 at ¶ 50.) Even taking as true and construing in Plaintiff's favor his next allegation that he "would remain in jail unlawfully for an additional period of two weeks" until July 20, 2016, Plaintiff's malicious-abuse-of-process claim accrued no later than July 20, 2016. Because Plaintiff's Complaint alleges no facts that state a timely claim for malicious abuse of process, that claim will be dismissed.

---

[7] Plaintiff alleges that on May 18, 2016, "the State filed a motion to go forward with probation violation proceedings[.]" (Doc. 1 at ¶ 40.) Even assuming, *arguendo*, that this action by the State is attributable to Defendants and constitutes improper use of process, Plaintiff's malicious-abuse-of-process claim is still time-barred because it was not brought within two years of May 18, 2016.

## CONCLUSION

For the reasons stated herein, Defendants' Rule 12(b)(6) Motion to Dismiss State Claims Based on Tort Immunity and Statute of Limitations (Doc. 19), filed on June 24, 2019, is **GRANTED**. If, in light of the Court's rulings, Plaintiff believes he is able to remedy certain deficiencies in his Complaint to state claims under New Mexico law, he may file a motion seeking leave to amend his Complaint and attaching his proposed Amended Complaint thereto, on or before December 31, 2019. *See Triplett v. LeFlore Cnty.*, 712 F.2d 444, 446 (10th Cir. 1983) ("In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" (quoting 3 Moore's Fed. Practice, ¶ 15.10 & n.2 (1983))).

**IT IS SO ORDERED.**

KIRTAN KHALSA
United States Magistrate Judge
Presiding by Consent