# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DYLAN MAHO,

      Plaintiff,

      v.                                  Civ. No. 19-182 KK/SCY

ROSALIND HANKINS and HAVEN
SCOGIN,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANTS' MOTIONS FOR QUALIFIED IMMUNITY

Plaintiff Dylan Maho has sued Defendants Rosalind Hankins and Haven Scogin claiming, among other things, that they violated his federal constitutional rights. Now before the Court are: (1) Defendants' Motion to Dismiss Federal Claims Based on Qualified Immunity (Doc. 28) ("MTD"), filed September 3, 2019; and, (2) Defendants' Motion for Summary Judgment Based on Qualified Immunity (Doc. 58) ("MSJ"), filed January 16, 2020. Plaintiff filed responses in opposition to the motions on October 11, 2019 (Doc. 35) ("MTD Response") and January 31, 2020 (Doc. 64) ("MSJ Response"); and, Defendants filed replies on October 25, 2019 (Doc. 37) ("MTD Reply") and February 6, 2020 (Doc. 65) ("MSJ Reply"). Having reviewed the parties' submissions, the record, and the relevant law, and being otherwise fully advised, the Court finds that none of Plaintiff's federal claims against Defendants in their individual capacities survive Defendants' motions because each such claim is subject to summary judgment or dismissal.[1]

---

[1] Plaintiff purports to sue each Defendant in her "individual and official capacity." (Doc. 1 at ¶¶ 123, 124.) An official-capacity suit "represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Here, Plaintiff alleges that Defendants are agents of the NMCD, a state entity that appears to be immune from suit under the Eleventh Amendment and not subject to claims for money damages under 42 U.S.C. § 1983. *See id.* at 169 ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court. . . . This bar remains in effect when State officials are sued for damages in their official capacity."); *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (state officials, sued for monetary relief in their official capacities, are not persons under Section 1983). However, in their MTD and MSJ,

## Facts and Procedural History

The following facts are drawn from the uncontested factual allegations in Plaintiff's Complaint, the record in Plaintiff's criminal case, and the material facts in Defendants' MSJ, which are deemed undisputed.[2] On May 1, 2014, Plaintiff entered into a Plea and Disposition Agreement ("Plea Agreement") in state district court, in which he pleaded no contest to one misdemeanor count and two fourth-degree felony counts of voyeurism in *New Mexico v. Maho*, D-202-CR-2013-04730 (2nd Jud. Dist. Ct.). (Doc. 1 at ¶ 2; Doc. 28-1 at 1.) The Plea Agreement included a "[s]entencing [a]greement" exposing Plaintiff to a total term of incarceration of four years minus one day with a 364-day cap on initial incarceration. (Doc. 1 at ¶ 2; Doc. 28-1 at 1.) The sentencing agreement further provided that Plaintiff was to serve his term of incarceration in the Metropolitan Detention Center's ("MDC") Community Custody Program ("CCP"). (*Id.*) Finally, the sentencing agreement provided that Plaintiff would be "placed on supervised probation for the term suspended" and required to comply with certain conditions of probation. (Doc. 28-1 at 2.) Those

---

Defendants limit their arguments to the defense of qualified immunity, which is only available to officers sued in their individual capacities. *Cox v. Glanz*, 800 F.3d 1231, 1239 n.1 (10th Cir. 2015); (Docs. 28, 58.) Thus, and because sovereign immunity can be waived and the parties have not addressed Plaintiff's official-capacity claims in their briefs, the Court will limit its analysis in this Memorandum Opinion and Order to Plaintiff's claims against Defendants in their individual capacities.

[2] Plaintiff failed to comply with Local Civil Rule 56.1 in responding to Defendants' MSJ. *See* D.N.M. LR-Civ. 56.1(b) (summary judgment response must include concise, numbered statement of disputed material facts that, *inter alia*, "refer[s] with particularity to those portions of the record upon which the non-movant relies"). As a result, all of the facts set forth in the statement of material facts in Defendants' MSJ are "deemed undisputed." *Id.*; (*see* Doc. 58 at 3-8.) The Court has reviewed all of the evidence submitted in relation to Defendants' MTD and MSJ, including the Plea and Disposition Agreement attached as an exhibit to the MTD. *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997); Fed. R. Civ. P. 56(c)(3). The Court has also reviewed, and takes judicial notice of, the sentencing hearing transcript and Judgment, Partially Suspended Sentence and Commitment in the record in Plaintiff's criminal case. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072–73 (10th Cir. 2008) (federal courts may "take judicial notice of adjudicative facts," including documents filed in state court, "at any stage of the proceedings, and in the absence of a request of a party"); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (court may take judicial notice of "facts which are a matter of public record" in deciding motions to dismiss). In light of the foregoing, the Court finds that there are no genuine factual disputes and that the resolution of Defendants' motions turns on the legal effect of Plaintiff's uncontested factual allegations, the criminal case record, and Defendants' undisputed material facts.

conditions included that Plaintiff "shall be evaluated by the probation [division] to determine if sex offender counseling is needed, and any other program deemed appropriate by his probation officer or treatment provider[.]" (*Id.*) The state district court approved the Plea Agreement on May 2, 2014. (*Id.* at 1, 5.)

In his Complaint, Plaintiff observes that the offenses to which he pleaded no contest were not "sex offenses, pursuant to NMSA 1978 § 31-20-5.2." (Doc. 1 at ¶ 7.) Defendants do not dispute this allegation, (*see* Doc. 58 at 3-8), nor could they, for the statute clearly indicates those offenders to whom it applies, and persons convicted of voyeurism are not among them. *See* N.M. Stat. Ann. § 31-20-5.2(F).

At Plaintiff's sentencing hearing on December 11, 2014, the state district court recognized that the Plea Agreement was "a fixed sentence/plea agreement wherein there's a sentencing agreement" except as to whether Plaintiff should receive a conditional discharge. *New Mexico v. Maho*, D-202-CR-2013-04730 (2nd Jud. Dist. Ct. Dec. 11, 2014), Transcript of Proceedings ("Sentencing Hearing Transcript") at 2. The court heard arguments on the conditional discharge question, confirmed that the prosecution had consulted with Plaintiff's victims in reaching the Plea Agreement, and noted that it had "reviewed the Pre-Sentence Report, . . . the plea and disposition agreement entered on May 2 of this year, and the sentencing agreement therein." *Id.* at 2-11. It then denied Plaintiff's request for a conditional discharge and ruled that Plaintiff was to serve "the full term of probation" and "the maximum sentence allowed by the plea." *Id.* at 11. In accordance with the Plea Agreement, the court orally sentenced Plaintiff to serve 364 days in CCP, to be followed by supervised probation for a term of three years. *Id.* at 11-12; (*see also* Doc. 1 at ¶¶ 2, 4, 17.) It further ordered that Plaintiff was to comply with conditions of probation

> to include no violations of law; that [Plaintiff] not use or possess alcohol or illegal drugs. There will be random testing to ensure he's not using alcohol or illegal drugs.

> I will also order no possession of firearms or deadly weapons. Screening, which will then determine what sort of treatment and counseling is most appropriately ordered by the Court to be effectuated through the probation department.

*Maho*, D-202-CR-2013-04730, Sentencing Hearing Transcript at 12. The court also ordered restitution to be determined by probation and for Plaintiff to have no contact with his victims or their families.  *Id.*

The state district court entered a final judgment and sentence in Plaintiff's criminal case about four months later, on April 6, 2015.[3] *New Mexico v. Maho*, D-202-CR-2013-04730 (2nd Jud. Dist. Ct. Apr. 6, 2015), Judgment, Partially Suspended Sentence and Commitment ("Judgment and Sentence") at 1. In the Judgment and Sentence, the court noted its acceptance of Plaintiff's plea and sentenced him in accordance with the Plea Agreement and as pronounced at the December 11, 2014 hearing. *Id.* at 1-3. As such, the court ordered, *inter alia*, that Plaintiff "shall be evaluated by the probation [division] to determine if sex offender counseling is needed, and [Plaintiff] shall enter and successfully complete any other program deemed appropriate by his probation officer or treatment provider." *Id.* at 2. However, as Plaintiff alleges, the court did not order him "to be placed on [sex offender] probation."[4] (Doc. 1 at ¶ 7.)

In his Complaint, Plaintiff alleges that Defendants Scogin and Hankins, as officers of the Probation and Parole Division ("Probation Division") of the New Mexico Corrections Department

---

[3] In his Complaint, Plaintiff alleges that "nearly five months" elapsed between December 11, 2014 and April 6, 2015. (Doc. 1 at ¶¶ 2, 17, 21.) In fact, however, about three months and 26 days elapsed between these dates.

[4] As "a fixed sentence/plea agreement wherein there's a sentencing agreement," *Maho*, D-202-CR-2013-04730, Sentencing Hearing Transcript at 2, the Plea Agreement was subject to New Mexico Rule of Criminal Procedure 5-304, which provides that "[i]f the court accepts a plea agreement that was made in exchange for a guaranteed, specific sentence, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement." N.M. R. Crim. P. 5-304(C). Thus, by approving the Plea Agreement and, after reviewing the pre-sentence report, sentencing Plaintiff pursuant to it on December 11, 2014, the court was bound to "embody in the judgment and sentence the disposition" for which it provided. *Id.*; *see Maho*, D-202-CR-2013-04730, Sentencing Hearing Transcript at 11-12. And in fact, the court duly adopted the sentence provided for in the Plea Agreement— including its probation conditions—in its April 6, 2015 Judgment and Sentence.

("NMCD"), "placed him on probation *prior* to CCP" on the day he was orally sentenced, *i.e.*, December 11, 2014. (*Id.* at ¶¶ 5, 76, 123, 124 (emphasis in original).) In their MSJ, Defendants present evidence that they were not the Probation Division employees who initially placed Plaintiff on probation. (Doc. 58 at 3-4, 10.) In his MSJ Response, Plaintiff cites to no evidence to counter Defendants' evidence on this point. (*See generally* Doc. 64.) However, he does allege in his Complaint—and Defendants do not dispute—that:  (1) Defendant Hankins "went over" the Plea Agreement with Plaintiff and "spoke with Defendant Scogin" before placing him on sex offender probation; (2) Defendants therefore knew that Plaintiff was supposed to serve his CCP term before he was placed on probation; (3) Defendants also knew that Plaintiff, having been placed on probation the same day he was orally sentenced, had not completed the CCP term; and, (4) Defendants nevertheless kept him on probation.[5] (Doc. 1 at ¶¶ 58, 76, 95-100; *see generally* Doc. 58.) In addition, Plaintiff alleges, and Defendants do not dispute, that Defendants placed him "on sex offender . . . probation, an intensive supervision program with far greater restrictions on liberty than the standard conditions imposed for ordinary probation." (Doc. 1 at ¶ 6.) However, Plaintiff has never alleged, nor is there any evidence in the record to suggest, that Defendants required him to register as a sex offender. (*See generally* Doc. 1.)

According to Plaintiff's Complaint, "[a]s early as February 4, 2015, Defendants ignored the fact that [Probation Division] Counselor [Bonnie] Sanchez had assessed Plaintiff Maho and found that no [sex offender] counseling was needed." (*Id.* at ¶¶ 26, 57.) Plaintiff further alleges that Ms. Sanchez told him no sex offender probation conditions were needed.  (*Id.* at ¶ 8.) In their

---

[5] In their MSJ, Defendants challenge Plaintiff's allegations regarding when he and his defense counsel notified them that he was not supposed to be on probation until he had served his CCP term. (Doc. 58 at 5-6.) However, in light of Plaintiff's uncontested factual allegations that Defendants already knew he (1) was not supposed to be on probation until he had served his CCP term and (2) had not completed the CCP term, (Doc. 1 at ¶¶ 58, 76, 95-100), the Court finds Defendants' undisputed facts regarding the notification issue to be immaterial. Likewise, for the reasons described below, whether Defendants initially placed Plaintiff on probation or simply kept him on probation despite their knowledge is immaterial to the Court's resolution of Defendants' motions.

MSJ, Defendants refute these allegations via Ms. Sanchez's affidavit, in which she attests that she was unable to complete her assessment of Plaintiff and made no recommendations regarding his treatment, but based on her "preliminary impression" he "could benefit from services related to his inappropriate sexual behavior." (Doc. 58-11 at 2.) Ms. Sanchez further attests that she "cannot make recommendations for sex offender conditions on probation," because her "role is limited to treatment purposes." (*Id.*) Plaintiff has identified no evidence to contradict Ms. Sanchez's affidavit. (*See generally* Doc. 64.)

In his Complaint, Plaintiff alleges that Defendant Scogin's motives for her treatment of him "are not known," but Defendant Hankins was motivated by racial animus. (Doc. 1 at ¶¶ 59, 66.) Plaintiff, who is Native American, alleges that Defendant Hankins "told him 'this is not the reservation,' called him 'Chief,' and referred to meetings as 'pow wows.'" (*Id.* at ¶¶ 59-61.) Defendants have presented no evidence to dispute these allegations. (*See* Doc. 58.) According to Plaintiff, "[o]ther similarly situated individuals" were not subjected to the same treatment. (Doc. 1 at ¶¶ 67-69.) However, Plaintiff does not identify or provide any details regarding these individuals in his Complaint, (*id.*), nor does such information appear elsewhere in the record.

Plaintiff alleges that, as a result of the more restrictive conditions of sex offender probation, he was deprived of contact with his son, who was between six and eight years old when the events alleged in the Complaint occurred. (*See id.* at ¶¶ 14, 27, 53, 105-10, 113.) He also claims that he was forced to move out of his house and unable to live with his roommate or his aunt because the conditions prohibited him from living near a school. (*Id.* at ¶¶ 101, 111.) Defendants have presented no evidence to dispute these allegations.

According to Plaintiff's Complaint, Defendants twice sought revocation of Plaintiff's probation based on alleged violations. (*Id.* at ¶¶ 10, 12, 14, 32, 33.) The first time, "Defendants

alleged that because Plaintiff Maho spent time with his six-year-old son, he should be put in jail." (*Id.* at ¶¶ 13, 14.) The second time, Defendants alleged a "technical violation" of the sex offender probation conditions. (*Id.* at ¶ 32.) Plaintiff claims that, "[a]t the time Defendants . . . sought to incarcerate [him] . . . for allegedly violating conditions [of sex offender] probation, [they] knew that he was not supposed to be on [sex offender] probation, and was supposed to have been on CCP for one year." (*Id.* at ¶ 99.) Nevertheless, he contends, Defendants submitted proposed orders revoking his probation, which the state district court subsequently entered. (*Id.* at ¶¶ 17, 32, 33, 100.[6]) Between March 2015 and July 2016, Plaintiff was incarcerated at MDC for a total of 471 days due to the court's orders revoking his probation. (*Id.* at ¶¶ 13, 28, 30, 53, 54.) Defendants have presented no evidence to dispute these allegations. (Doc. 58.)

On March 7, 2016, the New Mexico Court of Appeals reversed the state district court's revocation orders, reasoning that the court lacked the authority to revoke Plaintiff's probation because he was not on probation when he allegedly violated the conditions of it. *New Mexico v. Maho*, 2016 WL 1546436, at *1, *3 (N.M. App. Mar. 7, 2016). Plaintiff alleges that he was "finally released from MDC" on July 20, 2016, after the state district court issued an order dismissing the prosecution's revocation motions. (Doc. 1 at ¶¶ 35, 50, 52.)

On March 5, 2019, Plaintiff filed his Complaint in this matter, bringing claims against Defendants, *inter alia*, under 42 U.S.C. § 1983 alleging violations of his federal constitutional rights. (*Id.* at 1, 23-25.) In Count I, Plaintiff alleges a "[d]enial of [l]iberty in [v]iolation of the

---

[6] For the first and only time in paragraph 100, Plaintiff alleges that Defendants "sought incarceration nevertheless, falsely claiming that he had violated conditions that he was under no legal obligation to meet." (Doc. 1 at ¶ 100.) Standing alone, this allegation is ambiguous regarding whether Plaintiff is alleging that: (a) Defendants falsely claimed that he had engaged in conduct that violated his probation conditions; or, (b) Defendants' claims that he had violated his probation conditions were false because he was not actually on probation and was under no legal obligation to abide by any conditions. In the context of the entire Complaint, however, it seems clear to the Court that Plaintiff intended the latter meaning. If the Court's understanding is incorrect, Plaintiff may seek leave to file an amended complaint clarifying his factual allegations on this point by Friday, May 29, 2020.

[r]ight to [p]rocedural and [s]ubstantive [d]ue [p]rocess." (*Id.* at 23.) In support of this Count,

Plaintiff alleges that his

> right to due process of law, as guaranteed by the Fourteenth Amendment to the
> United States Constitution, was violated by the intentional actions of Defendants
> Hankins and Scogin, acting in concert, and in spite of being placed on notice that
> their conduct was unlawful, and the absence of any legal basis for incarcerating
> him.

(*Id.* at ¶ 125.) Similarly, in Counts II and III, Plaintiff alleges that his "right to be protected from

cruel and unusual punishments, as guaranteed by the Eighth and Fourteenth Amendments to the

United States Constitution," and his "right to the equal protection of the laws, as guaranteed by the

Fourteen Amendment to the United States Constitution," were "violated by the intentional actions

of Defendants Hankins and Scogin, acting in concert, and in spite of being placed on notice that

their conduct was unlawful, and the absence of any legal basis for incarcerating him." (*Id.* at ¶¶

126, 127.) In their MTD, Defendants move to dismiss Plaintiff's federal claims under Federal Rule

of Civil Procedure 12(b)(6), while in their MSJ, they move for summary judgment on these claims

under Federal Rule of Civil Procedure 56. (Docs. 28, 58.) In both motions, Defendants raise the

defense of qualified immunity. (*Id.*)

## Analysis

### I.      Standards for Dispositive Motions Raising the Defense of Qualified Immunity

Under Rule 12(b)(6), federal districts courts may dismiss a claim for "failure to state a

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss

under this rule, the district court must determine whether the plaintiff's complaint "contain[s]

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). "[R]elief must follow from the facts alleged[,]" *Bryson v. Gonzales*, 534 F.3d 1282,

1286 (10th Cir. 2008), which the court construes "in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). While courts must take as true all well-pleaded factual allegations in a complaint, they should not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the [law] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

"Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, [courts] will also review this defense on a motion to dismiss." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004). When a defendant raises the defense on a motion to dismiss, courts employ a two-part test to determine whether it applies. *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Under this test, "[q]ualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a [federal] statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). Thus, if a complaint's factual allegations fail to establish the violation of a federally protected right, it is subject to dismissal. *See, e.g., Brown*, 662 F.3d at 1172-73 (reversing denial of motion to dismiss equal protection claim where plaintiff failed to allege facts to support essential element of claim). Alternatively, a claim based on a right that was not clearly established at the relevant time is also subject to dismissal. *See, e.g., id.* at 1171-72 (reversing denial of motion to dismiss substantive due process claim where conduct alleged did not violate clearly established right). Courts faced with a motion to dismiss based on qualified immunity "have discretion to 'decide which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular case at hand.'" *Id.* at 1164 (brackets omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

A plaintiff who brings a claim subject to the defense of qualified immunity is not required to meet a heightened pleading standard, *i.e.*, he need not include in his complaint "all the factual allegations necessary to sustain a conclusion that [the] defendant[s] violated clearly established law." *Robbins*, 519 F.3d at 1249. However, he "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated [his] constitutional rights, and that those rights were clearly established at the time." *Id.* at 1249; *see Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("[I]t is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'") (emphasis in original). A complaint must include "enough allegations to give the defendants notice of the theory under which their claim is made," *Robbins*, 519 F.3d at 1249, and must "make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her[.]"[7] *Brown*, 662 F.3d at 1163 (emphases in original). "[I]t is incumbent upon a plaintiff to identify *specific* actions taken by *particular* defendants in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (emphases in original) (quotation marks omitted). "Without allegations sufficient to make clear the 'grounds' on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established." *Robbins*, 519 F.3d at 1249 (citation omitted).

Rule 56, in turn, provides that summary judgment

is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

---

[7] "[C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Robbins*, 519 F.3d at 1249.

> issue as to any material fact and that the moving party is entitled to a judgment as
> a matter of law.

*Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th Cir. 1999). "A dispute is genuine

when the evidence is such that a reasonable jury could return a verdict for the nonmoving party,

and a fact is material when it might affect the outcome of the suit under the governing substantive

law." *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (quotation marks and brackets

omitted). Only material factual disputes preclude the entry of summary judgment. *Atl. Richfield*

*Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000).

In general, "[t]he movant bears the initial burden of making a prima facie demonstration

of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998). Where the nonmovant

bears the burden of persuasion at trial,

> [t]he moving party may carry its initial burden either by producing affirmative
> evidence negating an essential element of the nonmoving party's claim, or by
> showing that the nonmoving party does not have enough evidence to carry its
> burden of persuasion at trial.

*Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002), *as amended on denial*

*of reh'g* (Jan. 23, 2003).

If the movant meets this initial burden, "the burden shifts to the nonmovant to go beyond

the pleadings and set forth specific facts that would be admissible in evidence in the event of trial

from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671 (quotation

marks omitted); *see also New Mexico v. Gen. Elec. Co.*, 322 F. Supp. 2d 1237, 1251 (D.N.M.

2004), *aff'd in part, dismissed in part on other grounds*, 467 F.3d 1223 (10th Cir. 2006) ("[I]f the

movant makes out a prima facie case that would entitle him to a judgment as a matter of law if

uncontroverted at trial, summary judgment will be granted unless the opposing party offers some

competent evidence that could be presented at trial showing that there is a genuine issue as to a

material fact."). The Court views the facts in the light most favorable to the nonmovant "if there is a genuine dispute as to those facts." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quotation marks omitted). Nevertheless, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

These standards "shift[]" when a summary judgment motion is based on qualified immunity. *Hernandez v. City of Albuquerque*, 120 F. Supp. 3d 1184, 1188 (D.N.M. 2015). Once a defendant invokes qualified immunity, "the plaintiff bears the heavy two-part burden of establishing that the defendant's actions violated a federal constitutional or statutory right and that the right in question was clearly established at the time of the defendant's unlawful conduct." *Id.* (quoting *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)) (quotation marks and brackets omitted); *see also Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) ("When a defendant asserts qualified immunity at summary judgment, the burden shifts to the *plaintiff,* who must clear *two hurdles* in order to defeat the defendant's motion. The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, *and* that the right was clearly established at the time of the alleged unlawful activity.") (emphases in original). As on a motion to dismiss, the Court may decide which of these two prongs to address first, based on the circumstances of the case. *Hernandez*, 120 F. Supp. 3d at 1188. "If the plaintiff meets its burden under this framework, the Court then proceeds with its ordinary summary judgment analysis and the burden reverts to the defendants to demonstrate that no genuine issue of material fact exists that would defeat their claim for qualified immunity." *Id.* (citing *Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992)).

For both motions to dismiss and for summary judgment, "[a] right is 'clearly established' if Supreme Court or Tenth Circuit case law exists on point or if the 'clearly established weight of authority from other circuits' found a constitutional violation from similar actions." *Peterson*, 371 F.3d at 1202 (quoting *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999)). Whether the law is clearly established is not to be defined "at a high level of generality." *Mullenix v. Luna*, — U.S. —, 136 S. Ct. 305, 308 (2015) (per curiam). Rather, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001); *see also Reichle v. Howards,* 566 U.S. 658, 664 (2012) (to be clearly established, a right's contours must have been so well-settled that "every reasonable official would have understood that what he is doing violates that right") (quotation marks and brackets omitted).

That "is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

> Officials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . The salient question . . . is whether the state of the law at the time of the conduct gave respondents fair warning that their alleged treatment of plaintiff was unconstitutional.

*Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004) (brackets omitted) (quoting *Hope*, 536 U.S. at 741). "[G]eneral statements of the law are not inherently incapable of giving fair and clear warning to officers, . . . but in the light of pre-existing law the unlawfulness must be apparent[.]" *White v. Pauly*, — U.S. —, 137 S. Ct. 548, 552 (2017) (per curiam) (citations and quotation marks omitted). Courts should bear in mind that the "exacting standard" for qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *City and Cnty. of San*

*Francisco, Calif. v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1774 (2015) (quotation marks and brackets omitted).

**II.     Application of Qualified Immunity Standards to Plaintiff's Federal Claims**

As previously noted, Plaintiff's Complaint contains three counts asserting federal claims: Count I alleges violations of the Fourteenth Amendment rights to procedural and substantive due process; Count II alleges violations of the Eighth Amendment right to be free from cruel and unusual punishment; and, Count III alleges violations of the Fourteenth Amendment right to equal protection of the laws.[8] (Doc. 1 at 23-25.) Also as previously noted, Defendants have moved for dismissal of and summary judgment on all of these claims.  (Doc. 28 at 1, 15; Doc. 58 at 2, 15.) In this regard, Defendants observe that their MSJ "complements but does not replace" their MTD and argue that "the Court can dismiss Plaintiff's [C]omplaint based on either or both motions."  (Doc. 58 at 2.)

The Court will resolve Defendants' motions regarding the procedural due process claims in Count I on summary judgment, because its analysis depends not only on Plaintiff's uncontested allegations in the Complaint, but also on undisputed material facts in the record as shown in Defendants' MSJ and not contested in Plaintiff's MSJ Response. The Court will resolve Defendants' motions as to the substantive due process claims in Count I, as well as the Eighth Amendment claims in Count II, on the MTD and the MSJ, because the operative standard is the

---

[8] In the body of his Complaint, Plaintiff also alleges that Defendants violated "his federal constitutional right against unreasonable seizures, as protected in the Fourth and Fourteenth Amendments." (Doc. 1 at ¶¶ 88, 91.) However, Plaintiff does not assert a separate count for violations of the Fourth Amendment, nor does he advance any arguments regarding this constitutional provision in either of his responses to Defendants' motions, even though Defendants have moved for qualified immunity on all of his federal claims. (Doc. 28 at 1, 15; Doc. 58 at 2, 15; *see generally* Docs. 35, 64; *see also* Doc. 35 at 3 (in his MTD Response, Plaintiff asserts that he has "alleged three specific federal constitutional violations," *i.e.*, of the Due Process Clause, the Eighth Amendment, and the Equal Protection Clause).) As such, the Court finds that Plaintiff has abandoned this theory of liability to the extent he ever intended to assert it and has also failed to identify any clearly established Fourth Amendment law that Defendants allegedly violated. *Cox*, 800 F.3d at 1245; *Robbins*, 519 F.3d at 1249.

same for both. Finally, to the best of the Court's ability to ascertain, Defendants make no arguments addressing Count III's equal protection claims in their MSJ. (*See generally* Doc. 58.) The Court will therefore consider whether Defendants are entitled to qualified immunity from these claims based solely on the MTD, applying the standards governing Rule 12(b)(6) motions to dismiss. For each Count in Plaintiff's Complaint, the Court will exercise its discretion to decide which prong of the qualified immunity test to address first, being mindful of the need to preserve "scarce judicial resources" in the context of "difficult and novel questions of constitutional or statutory interpretation that will have no effect on the outcome of the case." *al-Kidd*, 563 U.S. at 735 (quotation marks omitted); *Pearson*, 555 U.S. at 236.

### A.   Defendants are entitled to qualified immunity on Plaintiff's procedural due process claims.[9]

#### 1.   Applicable Law

"[T]o assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Brown*, 662 F.3d at 1167; *see also, e.g., Stears v. Sheridan Cnty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007) ("To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded.") (citing *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)).

---

[9] Count I alleges the deprivation of two distinct rights, *i.e.*, the right to procedural due process and the right to substantive due process. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (explaining that, under the Due Process Clause, "[t]he categories of substance and procedure are distinct"). "It is axiomatic that procedural and substantive due-process claims require distinct analyses[.]" *Cummings v. Dean*, 913 F.3d 1227, 1237 (10th Cir. 2019). As such, the Court will analyze Plaintiff's procedural and substantive due process claims, respectively, in separate sections.

With respect to the first step, "[w]hat constitutes a liberty or property interest within the meaning of the Fourteenth Amendment is not always easy to determine." *Elliott v. Martinez*, 675 F.3d 1241, 1245 (10th Cir. 2012). "[T]here exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either 'liberty' or 'property' as meant in the Due Process Clause." *Paul v. Davis*, 424 U.S. 693, 710 (1976). For a liberty or property interest to be protectible, "a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Greenholtz v. Inmates of Neb. Penal & Correctional Complex*, 442 U.S. 1, 7 (1979); *see Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983) ("an expectation of receiving process is not, without more," an interest the Due Process Clause protects).

"Liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Greenholtz*, 442 U.S. at 18 (Powell, J., concurring in part and dissenting in part) (citing *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977)).  Moreover, while "stigma or defamatory harm to reputation in itself" does not deprive a plaintiff of a protectible liberty interest, "a governmental defamation, coupled with an alteration in legal status, violates a liberty interest that triggers procedural due process protection." *Brown*, 662 F.3d at 1167.  "[C]ourts have referred to this standard as the 'stigma plus' test."  *Id.*  To satisfy the stigma-plus test, a plaintiff

> must demonstrate that: (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that significantly altered his or her status as a matter of state law.

*Gwinn v. Awmiller*, 354 F.3d 1211, 1216 (10th Cir. 2004) (quotation marks and brackets omitted); *Kvech v. N.M. Dep't of Pub. Safety*, 987 F. Supp. 2d 1162, 1197 (D.N.M. 2013).

With respect to the second step of the procedural due process test, in turn, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks omitted). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (alteration omitted).

The appropriate level of process may extinguish an individual's protectible interest. Thus, for example, "a valid criminal conviction and prison sentence . . . sufficiently extinguish a defendant's liberty to empower the [s]tate to confine him in any of its prisons." *Vitek v. Jones*, 445 U.S. 480, 493 (1980) (citation and quotation marks omitted); *see also, e.g.*, *Meachum v. Fano*, 427 U.S. 215, 224 (1976) ("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the [s]tate may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution."). Even "changes in the conditions of confinement having a substantial adverse impact on the prisoner are not alone sufficient to invoke the protections of the Due Process Clause 'as long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him.'" *Vitek*, 445 U.S at 493 (quoting *Montanye v. Haymes*, 427 U.S. 236, 242 (1976)) (brackets omitted).

## 2.    Application to Plaintiff's Claims

As a preliminary matter, Plaintiff repeatedly alleges that Defendants disregarded, curtailed, deprived him of, and violated his "liberty," "liberty interests," or "constitutionally-protected liberty interests." (*See, e.g.*, Doc. 1 at ¶¶ 11, 31, 38, 43, 56, 73-74, 78, 87, 94, 104.) Nevertheless, he fails to make clear—in either his Complaint or his responses to Defendants' motions for qualified immunity—under what theory of liberty deprivation he brings his due process claims.

Neither the Court nor Defendants are required to guess at the possible bases for Plaintiff's claims; rather, Plaintiff is responsible for giving notice of his theories of liability. *See Assoc. Gen. Contractors of Cal., Inc.*, 459 U.S. at 526; *Robbins*, 519 F.3d at 1249. Moreover, once Defendants raised the defense of qualified immunity, it became incumbent on Plaintiff to explicate the bases for his claims in order to demonstrate that Defendants violated his clearly established rights. *Cox*, 800 F.3d at 1245; *Robbins*, 519 F.3d at 1249. This, however, he has consistently failed to do. (*See generally* Docs. 1, 35, 64.) Instead, he merely refers to "[t]he cases cited in the Complaint[,]" which he contends "suffice to show that the constitutional rights violated were already established in the law." (Doc. 35 at 7.)

In these circumstances, the Court must necessarily limit its analysis to what it is reasonably able to discern as the liberty interests of which Plaintiff claims he was deprived. Construed in the light most favorable to him, Plaintiff's Complaint appears to allege that Defendants deprived him of a protected liberty interest in two ways:  first, they placed—and kept—him on probation prematurely, and second, they wrongfully placed him on sex offender probation, which actions collectively led to the revocation of his probation and his consequent incarceration.[10] (*See* Doc. 1 at ¶¶ 73, 79-81, 86-87.) The Court will consider whether either of these acts, under the undisputed factual circumstances presented here, satisfies the two-prong qualified immunity test with respect to Plaintiff's procedural due process claims. *al-Kidd*, 563 U.S. at 735; *Cox*, 800 F.3d at 1245; *Robbins*, 519 F.3d at 1249.

---

[10] The Court does not consider the revocation of Plaintiff's probation and his consequent incarceration to be separate factual predicates for his claims against Defendants. The revocation and consequent incarceration are harms that, in light of Plaintiff's allegations, flowed from Defendants' acts of placing and keeping him on probation and imposing sex offender probation conditions on him. (*See generally* Docs. 1, 35, 64.) In other words, they are alleged damages resulting from Defendants' wrongful acts, rather than independent wrongful acts. (*Id.*) In this regard, notably, Plaintiff has not denied that he committed acts that violated the conditions of his probation, assuming the conditions were valid. Rather, he claims that he should not have been subject to conditions in the first place. (*See, e.g.*, Doc. 1 at ¶¶ 10, 12-14, 17, 32-33.)

### a.       Placing and Keeping Plaintiff on Probation Prematurely

Plaintiff first alleges that Defendants placed and kept him on probation "*prior* to CCP" even though, according to the state district court's orders, "there was to be no probation until after Plaintiff Maho had completed a period of 364 days on CCP." (Doc. 1 at ¶¶ 2, 4-5, 15, 117 (emphasis in original).) He further contends that "[p]recedent clearly established Plaintiff Maho's right not to be placed on probation without a court order placing him on probation" and "[a] reasonable official in Defendants Hankins and Scogin's circumstances would know that the law forbade them from placing Plaintiff Maho on probation on or about December 11, 2014." (*Id.* at ¶¶ 76, 79.) As explained below, the Court concludes that Defendants are entitled to summary judgment on Plaintiff's procedural due process claims brought on this basis, because the law was not clearly established that placing and keeping Plaintiff on probation in the undisputed factual circumstances presented here would violate the procedural component of the Due Process Clause.

The only appellate or Supreme Court case Plaintiff cites in support of these claims is *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936).[11] (Doc. 1 at ¶¶ 80, 81.) *Wampler* involved the habeas corpus petition of Thomas Wampler, who was convicted of federal income tax evasion and sentenced to eighteen months' imprisonment and a $5,000 fine. 298 U.S. at 461-62. In issuing a warrant of commitment to the penitentiary, the court clerk added a condition to the sentence: that the defendant remain in custody until the $5,000 fine was paid. *Id.* Towards the end of his original term of incarceration, Mr. Wampler petitioned the sentencing court to strike the additional

---

[11] Plaintiff does, in his MSJ Response, also cite to a district court case—*Reid v. Pautler*, 36 F. Supp. 3d 1067, 1195 (D.N.M. 2014)—for the proposition that an individual has "a protected liberty interest in not being placed on probation without first being convicted of a crime." (Doc. 64 at 4.)  However, there is no dispute that Plaintiff pleaded no contest to three crimes and the court accepted his plea and orally sentenced him before he was placed on probation, making *Reid*'s general statement of the law inapplicable to this case.

condition, contending that "it was no part of the sentence" because the court had not ordered it. *Id.*
at 462.

After that petition was denied, Mr. Wampler petitioned the court in the district where he
was incarcerated for a writ of habeas corpus, "alleging that the proper term of his imprisonment
had expired and that his detention had become unlawful." *Id.* at 462-63. That court granted Mr.
Wampler's habeas petition, whereupon the warden appealed to the Third Circuit. *Id.* The Third
Circuit, in turn, certified three questions to the Supreme Court: (1) was the additional condition
"void" or "merely irregular"?; (2) was the sentencing court's denial of Mr. Wampler's petition to
strike the additional condition a "final judgment conclusive on the issue as to the validity of such
commitment until reversed by appropriate proceedings for review"?; and, (3) "[w]ill habeas corpus
lie in one court to correct the commitment of another court which certainly, definitely, and
specifically directs the imprisonment of relator for nonpayment of fine and costs on the ground
that such provision was inserted by the Clerk, but was not the sentence . . . pronounced by the
court?" *Id.* at 463 (quotation marks omitted).

The Supreme Court answered these questions as follows: "To the first question we say that
the provision is void. To the second question we answer 'no,' and to the third question 'yes.'" *Id.*
at 467. In holding that the condition the clerk added was "void," the Supreme Court explained that
"[t]he choice of pains and penalties, when choice is committed to the discretion of the court, is part
of the judicial function. This being so, it must have expression in the sentence, and the sentence is
the judgment." *Id.* at 464. The Court noted that continued imprisonment for failure to pay a fine is
a discretionary matter left to the sentencing court:  "[i]mprisonment does not follow automatically
upon a showing of default in payment. It follows, if at all, because the consequence has been
prescribed in the imposition of the sentence." *Id.* at 463-64. The Court rejected the argument that

the additional condition was permissible because the clerk added it pursuant to the sentencing court's customary practice, stating that "[t]he court speaks through its judgment, and not through any other medium." *Id.* at 465. The Court explained that "[a] warrant of commitment departing in matter of substance from the judgment back of it is void[,]" and concluded that the sentencing court's refusal to strike the condition was not a bar to Mr. Wampler's habeas corpus petition. *Id.* at 465-67.

Although the *Wampler* Court did not identify the constitutional basis for its holding, the decision appears to have been grounded in considerations of procedural due process. *Maciel v. Cate*, 731 F.3d 928, 933 (9th Cir. 2013). As the Second Circuit explained,

> *Wampler* does not hold that the defendant *could* not have been sentenced to the punishment that the [government] attempt[ed] to impose on him. It simply recognizes that he *was* not sentenced to that punishment. Any deficiency in the sentence could have been corrected through the proper procedures.

*Earley v. Murray*, 451 F.3d 71, 76 n.1 (2d Cir. 2006) (emphases in original).

In this Court's view, *Wampler* fails to clearly establish that Defendants violated Plaintiff's procedural due process rights by placing and keeping him on probation. The decision is simply too factually distinct to make clear to a reasonable probation officer that Defendants' conduct was unlawful in the situation they confronted. *Saucier*, 533 U.S. at 202. In *Wampler*, the deprivation at issue—an additional term of imprisonment pending payment of a fine—was not included in the sentence the court imposed; it was added administratively after sentencing. Here, in contrast, the deprivation of which Plaintiff complains—probation—was included in the "pains and penalties" the state district court imposed on the record in open court in December 2014 and in its Judgment and Sentence in April 2015, in accordance with the fixed-sentence Plea Agreement into which Plaintiff entered and which the court approved in May 2014.

Nevertheless, Plaintiff offers two arguments to challenge Defendants' conduct. First, he relies on the New Mexico Court of Appeals' ruling that, as a matter of state law, "the district court lacked the authority to revoke [Plaintiff's] probation because he was not on probation at the time that he allegedly violated probation." *Maho*, 2016 WL 1546436 at *1; (*see, e.g.,* Doc. 1 at ¶¶ 112, 114-16.) In so holding, the state appellate court appeared to reason that the state district court's December 2014 "oral pronouncement" was "not a final judgment" because it was "subject to change until reduced to writing." 2016 WL 1546436 at *2. Second, Plaintiff emphasizes that, according to the state district court's orders, he was not supposed to be on probation until after he had served his CCP term. (*See, e.g.*, Doc. 1 at ¶¶ 2, 4-5, 15, 117-18.)

Regarding Plaintiff's first argument, the Court notes that the state appellate court's ruling regarding the effect of the state district court's oral sentence under state law does not resolve the separate and distinct question of whether Defendants violated clearly established federal law by implementing that oral sentence. "New Mexico law does not define the contours of the Due Process Clause; it may be that there is overlap between what New Mexico requires and what the Constitution requires, but it may also be that New Mexico requires more than what the Constitution requires." *Reid v. Pautler*, 36 F. Supp. 3d 1067, 1197 (D.N.M. 2014). And notably, regarding both of Plaintiff's arguments, Plaintiff alleges, not that Defendants *added* a deprivation of liberty to his sentence, but rather that they *implemented* a deprivation the sentencing court imposed *prematurely*, *i.e.*, before entry of the Judgment and Sentence and before Plaintiff had served his CCP term.

As such, and notwithstanding Plaintiff's arguments to the contrary, the Court maintains that this case is not sufficiently analogous to *Wampler* for that decision to make the unlawfulness of Defendants' actions "apparent." *White*, 137 S. Ct. at 552. The *Wampler* decision expressly addressed a sentence that departed from the court's judgment "in matter of substance." 298 U.S.

at 465. Defendants' premature implementation of a term of probation the sentencing court undisputedly ordered—albeit orally until April 2015, and to be served after CCP—does not clearly fall within that category, if it does so at all. As a result, the Court cannot say that *Wampler* gave Defendants "fair warning that their alleged treatment of [P]laintiff was unconstitutional.'" *Pierce*, 359 F.3d at 1298. In short, insofar as Plaintiff's procedural due process claims are premised on Defendants' placing and keeping him on probation prematurely, the Court will grant Defendants summary judgment on these claims because Plaintiff has failed to establish that their actions violated clearly established law. *Cox*, 800 F.3d at 1245.

<strong>b.      Placing Sex Offender Probation Conditions on Plaintiff</strong>

Plaintiff also alleges that Defendants violated his procedural due process rights by placing him on "sex offender probation." (*See, e.g.*, Doc. 1 at ¶¶ 73-75, 85-86.) In his Complaint, Plaintiff relies on *Brown*, 662 F.3d at 1152, to support his claim that he had a clearly established right to be free from sex offender probation conditions where his "offenses of conviction are not sex offenses, pursuant to NMSA 1978, § 31-20-5.2, and he was not ordered to be placed on [sex offender] probation by the [state district c]ourt." (Doc. 1 at ¶¶ 6-7, 80, 86.)

In their motions, Defendants argue that *Brown* is distinguishable and that they are entitled to qualified immunity because the law was not clearly established that placing sex offender probation conditions on Plaintiff in the undisputed factual circumstances of this case violated a federally protected right of which a reasonable probation officer would have known. (Doc. 28 at 14-15; Doc. 58 at 15.) Plaintiff does not address this argument in his responses to Defendants' motions, nor does he try to explain how *Brown* or any other precedent clearly established his right not to have sex offender conditions placed on him. (*See generally* Docs. 35, 64.) Nevertheless, the Court will consider whether *Brown* clearly establishes that Defendants violated Plaintiff's

23

procedural due process rights by placing sex offender probation conditions on him in light of the undisputed factual circumstances presented here.

The plaintiff in *Brown* pleaded guilty to several criminal charges arising from an armed robbery, including two counts of false imprisonment under New Mexico law.  *Brown*, 662 F.3d at 1159. As a result, he was sentenced to four years' incarceration followed by five years of intensive supervised probation. *Id.* At the time, New Mexico law did not require a person convicted of false imprisonment to register as a sex offender unless the victim was a minor other than the person's child. *Id.* at 1158 (citing N.M. Stat. Ann. § 29-11A-3(E)(7) (2007)). Moreover, a person convicted of false imprisonment was not a "sex offender" subject to the period, terms, and conditions of probation set forth in Section 31-20-5.2 of the New Mexico Statutes Annotated. *Brown*, 662 F.3d at 1158; N.M. Stat. Ann. § 31-20-5.2(F).

According to the *Brown* plaintiff's allegations, the court that sentenced him did not order him to be placed in the sex offender probation unit or to register as a sex offender. *Brown*, 662 F.3d at 1159. Nevertheless, upon the plaintiff's release from custody, his probation officer placed him in the sex offender probation unit and required him to register as a sex offender, based on the officer's unsupported belief that the plaintiff's victim was a minor. *Id.* at 1157, 1159. The plaintiff successfully challenged the conditions his probation officer imposed, and the sentencing court ordered that the plaintiff be removed from the sex offender probation unit and his name be removed from the sex offender registry. *Id.* at 1159.

The plaintiff then brought suit in federal court, alleging constitutional violations under 42 U.S.C. § 1983. *Id.* at 1160. *Inter alia*, the plaintiff alleged that his probation officer's actions violated his constitutional right to procedural due process. *Id.* at 1157, 1160. The district court denied the probation officer's motion to dismiss this claim based on qualified immunity, finding

that he had allegedly violated the plaintiff's clearly established procedural due process rights by "wrongly classifying him as a sex offender when he had not committed a sex offense." *Id.* at 1160. On interlocutory appeal, the Tenth Circuit affirmed the district court's denial of qualified immunity as to this claim. *Id.* at 1173.

The *Brown* court began its analysis by noting that the plaintiff brought his procedural due process claim under the stigma-plus theory of liberty deprivation, *i.e.*, he alleged that a governmental defamation, coupled with an alteration in his legal status, deprived him of a constitutionally protected liberty interest. *Id.* at 1167. The court found that the probation officer's alleged acts of "wrongly plac[ing]" the plaintiff in the sex offender probation unit and "direct[ing] him to register as a sex offender" constituted a "false statement" that "sufficed to damage [the plaintiff's] reputation[,]" thereby satisfying the first element of a stigma-plus claim. *Id.* at 1169.

Proceeding to the second element—alteration of the plaintiff's legal status—the *Brown* court found that the registration requirement and assignment to the sex offender probation unit imposed burdens on the plaintiff that significantly altered his legal status. *Id.* According to the Tenth Circuit, being required to register as a sex offender alters a person's legal status because failure to comply with registration requirements exposes the person to felony prosecution. *Id.* Additionally, the *Brown* court concluded that placing the plaintiff in the sex offender probation unit altered his legal status because he was thereby subjected to restrictions on travel, employment, and residency "that may be more stringent than those normally imposed" on non-sex-offender probationers. *Id.*

Turning to whether the law was clearly established at the relevant time, the *Brown* court concluded that the plaintiff's procedural due process right to notice and an opportunity to challenge his classification as a sex offender following his conviction of a non-sexual offense was clearly

established under *Gwinn*, 354 F.3d at 1211. *Brown*, 662 F.3d at 1171. In *Gwinn*, the Tenth Circuit

held that the plaintiff "sufficiently alleged that his classification as a sex offender outside the prison

walls implicated a liberty interest," by claiming that

> (1) the government made a false statement about him-that he was a sexual offender-
> that was sufficiently derogatory to injure his reputation, and that (2) he experienced
> a governmentally imposed burden that significantly altered his status as a matter of
> state law, in that he was required to register as a sex offender. These allegations are
> sufficient to meet the applicable "stigma-plus" standard.

*Gwinn*, 354 F.3d at 1223–24 (citation, quotation marks, and alterations omitted).  The *Brown* court

concluded that, accepting the plaintiff's allegations as true, "it should have been apparent to a

reasonable officer that classifying [the plaintiff] as a sex offender violated his clearly established

procedural due process right," and that the defendant probation officer was thus not entitled to

dismissal based on qualified immunity. *Brown*, 662 F.3d at 1171.

Based on the foregoing, this Court concludes that, under clearly established Tenth Circuit

law, a plaintiff satisfies the stigma-plus test when he alleges that:  (1) a government actor made a

false statement about him by labeling him as a sex offender following his conviction of a non-

sexual offense; and, (2) he experienced a governmentally-imposed burden that significantly altered

his legal status, *e.g.*, he was required to register as a sex offender or was subject to more restrictive

probation conditions than a non-sex-offender would be. *See id.* at 1169-71; *Gwinn*, 354 F.3d at

1216, 1221-24. Such a plaintiff "is entitled to certain minimal procedural protections before being

classified as a sex offender." *Brown*, 662 F.3d at 1171.

Here, however, Plaintiff fails to satisfy the first element of this test because he differs

significantly from the plaintiffs in *Gwinn* and *Brown* on a crucial point, specifically, whether he

was convicted of a sexual offense. In both *Gwinn* and *Brown*, the plaintiffs were unequivocally

convicted of non-sexual offenses. The plaintiff in *Gwinn*, though charged with robbery, aggravated

26

robbery, and sexual assault, only "pleaded guilty to robbery, and the sexual assault charge was dismissed." *Gwinn*, 354 F.3d at 1214. Similarly, the plaintiff in *Brown* was convicted of false imprisonment, *i.e.*, "intentionally confining or restraining another person without his consent and with knowledge that he has no lawful authority to do so," in the course of an armed robbery.[12] N.M. Stat. Ann. § 30-4-3; *Brown*, 662 F.3d at 1159.

Plaintiff, in contrast, was convicted of offenses that are both formally and substantively sexual.[13] It is undisputed that Plaintiff was convicted of voyeurism in violation of Section 30-9-20 of the New Mexico Statutes Annotated.[14] (Doc. 1 at ¶ 2; Doc. 28-1 at 1); *Maho*, D-202-CR-2013-04730, Judgment and Sentence at 1. Formally, New Mexico law classifies voyeurism as a "[s]exual [o]ffense." *See* N.M. Stat. Ann. ch. 30, art. 9 ("Sexual Offenses"); *New Mexico v. Aguilar*, 2019 WL 3766190, at * 2 (N.M. App. Jul. 31, 2019) (unpublished) ("In New Mexico, sexual offenses are a category of criminal offense set forth in NMSA 1978, Sections 30-9-1 to -21[.]").

Additionally, under New Mexico law, voyeurism is an offense that is substantively sexual in nature. Section 30-9-20 defines voyeurism as

> intentionally using the unaided eye to view or intentionally using an instrumentality to view, photograph, videotape, film, webcast or record the *intimate areas* of another person without the knowledge and consent of that person:
>
> > (1)  while the person is in the interior of a bedroom, bathroom, changing room, fitting room, dressing room or tanning booth or the interior of any other area in which the person has a reasonable expectation of privacy; or

---

[12] Under New Mexico law, false imprisonment is classified as a "[k]idnapping" offense.  N.M. Stat. Ann. ch. 30, art. 4.

[13] In his Complaint, Plaintiff alleges that his offenses of conviction are not "sex offenses, pursuant to NMSA 1978, § 31-20-5.2."  (Doc. 1 at ¶ 7.) However, he never addresses whether the offenses are formally or substantively sexual in nature.  (*See generally id.*; Docs. 35, 64.)

[14] More specifically, Plaintiff was convicted of three counts of voyeurism, two of which were fourth-degree felonies, meaning that Plaintiff's victims were minors. (Doc. 28-1 at 1); *Maho*, D-202-CR-2013-04730, Judgment and Sentence at 1; *see* N.M. Stat. Ann. § 30-9-20(B).

(2) under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

N.M. Stat. Ann. § 30-9-20(A) (emphasis added). "[I]ntimate areas" means "the primary genital area, groin, buttocks, anus or breasts or the undergarments that cover those areas[.]" N.M. Stat. Ann. § 30-9-20(C)(1). Thus, the essence of voyeurism is the invasion of another's sexual privacy.

In these circumstances, unlike those presented in *Gwinn* and *Brown*, subjecting Plaintiff to sex offender probation conditions or even calling him a "sexual deviant" cannot be considered false or defamatory. (*See, e.g.*, Doc. 1 at ¶¶ 6, 62.) Plaintiff's offenses were sexual; and, while he did not expressly admit guilt, by his no contest pleas he consented to being convicted and punished as if he were guilty of both misdemeanor and felony voyeurism offenses.  *See North Carolina v. Alford*, 400 U.S. 25, 35-36 & n.8 (1970); *see also, e.g.*, American Psychological Association, "Dictionary of Psychology," https://dictionary.apa.org/sexual-deviance (last visited May 13, 2020) (defining "sexual deviance" as "any sexual behavior . . . that is regarded as significantly different from the standards established by a culture or subculture. Deviant forms of sexual behavior may include *voyeurism*, fetishism, bestiality, necrophilia, transvestism, sadism, and exhibitionism") (emphasis added).

Admittedly, the facts in this case bear some resemblance to those in *Gwinn* and *Brown*. Like the plaintiffs in those cases, state law did not require Plaintiff to register as a sex offender, *see* N.M. Stat. Ann. § 29-11A-3(I), nor did it subject him to New Mexico's special probation scheme for certain enumerated "sex offenders" under Section 31-20-5.2. *See* N.M. Stat. Ann. § 31-20-5.2(F). And, as in *Gwinn* and *Brown*, Plaintiff was undeniably subject to substantial restrictions on his liberty that altered his legal status. However, the undisputed material facts in this case differ significantly from the facts alleged in *Gwinn* and *Brown*, not only because Plaintiff was convicted of sexual offenses, but also because Defendants did not make him register as a sex offender and

28

had authority independent of Section 31-20-5.2 to impose "sex offender probation" conditions on him.

Plainly, Plaintiff has never alleged that Defendants required him to register as a sex offender. (*See generally* Doc. 1.) Further, while Plaintiff correctly points out that a person convicted of "voyeurism" does not meet the definition of "sex offender" under Section 31-20-5.2, (Doc. 1 at ¶ 7), that point is irrelevant here, for two reasons. First, though Plaintiff was not convicted of an offense triggering Section 31-20-5.2's special probation scheme, Section 31-20-5.2 does not purport to bar the imposition of any of the probation conditions to which that statute refers on anyone other than "sex offenders" under the statute. Moreover, for the Court to interpret Section 31-20-5.2 to act as such a bar would lead to absurd results. For example, one of the "reasonable terms and conditions of probation" by which a "sex offender" may be required to abide is "a probationary agreement . . . not to use alcohol or drugs." N.M. Stat. Ann. § 31-20-5.2(C)(3). It would be patently absurd for the Court to construe Section 31-20-5.2 to bar the imposition of this condition on any probationer who is not a "sex offender" as the statute defines that term.

Second, Plaintiff has neither alleged nor shown that Defendants actually relied on Section 31-20-5.2 to place "sex offender probation" conditions on him; and, state law, the Plea Agreement, and the sentencing court's orders conferred independent authority on them to do so. New Mexico's probation statutes grant sentencing courts broad discretion to fashion terms and conditions of probation, including allowing them to order *any* defendant—not just "sex offenders" who fall within Section 31-20-5.2—to "undergo available medical or psychiatric treatment[,]" "be placed on probation under the supervision, guidance or direction of the adult probation and parole

division[,]" and "satisfy any other conditions reasonably related to the defendant's rehabilitation." N.M. Stat. Ann. §§ 31-20-5, 31-20-6(B), (C), (F).

In accordance with these provisions—presumably because it was "reasonably related" to Plaintiff's rehabilitation for the sexual offenses for which he was convicted—and pursuant to the fixed-sentence Plea Agreement he signed and the court accepted, the court ordered Plaintiff to be "evaluated by the probation [division] to determine if sex offender counseling is needed," and to "enter and successfully complete any other program deemed appropriate by his probation officer or treatment provider[.]" (Doc. 28-1 at 2); *Maho*, D-202-CR-2013-04730, Judgment and Sentence at 2; *see also id.*, Sentencing Hearing Transcript at 11-12. Moreover, by operation of New Mexico Rule of Criminal Procedure 5-304, the court adopted these provisions no later than December 11, 2014, by which date it had reviewed the pre-sentence report, and approved and orally sentenced Plaintiff in accordance with the Plea Agreement. (Doc. 28-1 at 5); *Maho*, D-202-CR-2013-04730, Sentencing Hearing Transcript at 11-12; *see* N.M. R. Cr. P. 5-304(C).

Plaintiff appears to claim that, notwithstanding the foregoing, Defendants lacked the independent authority to place him on sex offender probation because Ms. Sanchez assessed him and found that he did not need sex offender counseling or conditions. (Doc. 1 at ¶¶ 8, 26, 57.) There are two problems with this position. First, the sentencing court committed the decision of which "programs" Plaintiff should complete to his "probation officer *or* treatment provider." (Doc. 28-1 at 2 (emphasis added)); *Maho*, D-202-CR-2013-04730, Judgment and Sentence at 2 (emphasis added). As probation officers, Defendants were therefore entitled to place sex offender probation conditions on Plaintiff regardless of Ms. Sanchez's assessment.

Second, Defendants have presented Ms. Sanchez's affidavit to the effect that she never completed her assessment of Plaintiff and made no recommendations regarding his treatment or

probation conditions, but based on her "preliminary impression" he "could benefit from services related to his inappropriate sexual behavior." (Doc. 58-11 at 1-2.) Plaintiff has presented no evidence to dispute this affidavit, and indeed appears to have conceded his inability to do so. (*See* Doc. 58-2 at 8-9.) Thus, if anything, Ms. Sanchez's input would have supported Defendants' authority to impose sex offender probation conditions on Plaintiff. Given these undisputed material facts, the Court fails to see how Defendants' act of placing Plaintiff on "sex offender probation" amounted to a false statement about him or exceeded their authority to impose probation conditions on him independently of Section 31-20-5.2. For these reasons, the Court finds that there is no genuine issue of material fact and Defendants are entitled to judgment as a matter of law on Plaintiff's procedural due process claims based on a stigma-plus theory.

Moreover, even assuming *arguendo* that it is defamatory to place someone on "sex offender probation" unless he meets the definition of "sex offender" under Section 31-20-5.2, the law was far from clearly established in 2014 and 2015 that to do so would violate a person's procedural due process rights. Contrary to Plaintiff's arguments, *Gwinn* and *Brown* do not stand for the proposition that it is defamatory to place someone on "sex offender probation" when he has been convicted of a sexual offense but does not meet the definition of "sex offender" in Section 31-20-5.2. They cannot, because the plaintiffs in *Gwinn* and *Brown* had not been convicted of sexual offenses. By virtue of his conviction of sexual offenses and the state district court's orders that he be evaluated for "sex offender counseling" and complete "any other program deemed appropriate by his probation officer or treatment provider," (Doc. 28-1 at 2); *Maho*, D-202-CR-2013-04730, Judgment and Sentence at 2, Plaintiff occupies a significantly different position than did the plaintiffs in *Gwinn* and *Brown*, and these decisions cannot be said to give Defendants fair warning that their alleged treatment of Plaintiff was unconstitutional. *Pierce*, 359 F.3d at 1298.

Thus, the Court finds that Defendants are also entitled to qualified immunity from Plaintiff's claims that they violated his procedural due process rights by placing him on "sex offender probation" because neither *Gwinn* nor *Brown* clearly establishes that Defendants violated his constitutional rights.

**B.     Defendants are entitled to qualified immunity on Plaintiff's substantive due process claims.**

### 1.      Applicable Law

The Due Process Clause of the Fourteenth Amendment also includes "a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (quotation marks omitted). "[T]he touchstone of due process is protection of the individual against arbitrary action of government, whether the fault lies in a denial of fundamental procedural fairness, or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective[.]" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (quotation marks and citations omitted). To state a substantive due process claim based on executive action, a Section 1983 plaintiff must allege conduct that "shocks the conscience." *Id.* at 846. "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849.

When a defendant alleged to have violated a plaintiff's substantive due process rights raises the defense of qualified immunity, courts "must be especially sensitive to whether existing relevant precedents at the time [of the alleged violation] squarely governed the *particular* circumstances that [the defendant] faced and demonstrated that the violative nature of the *particular conduct* is clearly established." *Cummings v. Dean*, 913 F.3d 1227, 1241 (10th Cir. 2019) (emphases in original) (citations, quotation marks, and alterations omitted). That is because "the standard for

liability for a violation of a person's substantive due-process rights is broad and general[,]" and "consideration of whether a person's substantive due-process rights have been infringed requires a balancing of the person's constitutionally protected interests against the relevant state interests." *Id.* at 1240 (alteration and quotation marks omitted). As is true in any case where the defense of qualified immunity has been raised, the plaintiff bears the burden of presenting a case on point or demonstrating that the weight of authority from other circuits found a constitutional violation from actions similar to those alleged. *See id.* at 1239, 1243. Where a plaintiff fails to meet this burden, the defendant is entitled to qualified immunity. *Id.* at 1245.

### 2.     Application to Plaintiff's Claims

Viewed in the light most favorable to Plaintiff, the Complaint, though unclear, appears to allege that Defendants' actions *in toto*—*i.e.*, prematurely placing and keeping him on probation and imposing restrictive conditions on him that required him to move, deprived him of contact with his son, and led to the revocation of his probation and incarceration, despite knowing that he was not supposed to be on standard or sex offender probation—constitute the kind of arbitrary government action against which the substantive component of the Due Process Clause is intended to protect.[15]  (*See generally* Doc. 1.)

In his responses to Defendants' motions, Plaintiff cites not a single case to support his substantive due process claims, much less one demonstrating that Defendants' alleged actions violated his clearly established rights. (*See* Docs. 35, 64.) Rather, as discussed in the previous

---

[15] As previously noted, Plaintiff brought his procedural and substantive due process claims under a single count, which includes a single allegation referring generally to Defendants' "intentional actions." (Doc. 1 at ¶ 125.)  As with Plaintiff's procedural due process claims, this count fails to explain how Defendants' actions allegedly violated his substantive due process rights. To the extent Plaintiff's due process claims could have been premised on a theory of deprivation of his liberty interest in familial association, his Complaint fails to clearly allege such a theory.  Moreover, Plaintiff raised neither arguments nor clearly established law addressing this theory of liability in his responses to the MTD and MSJ.  The Court will not speculate as to or attempt to address other possible bases for Plaintiff's due process claim that are not fairly discernible in either the Complaint or his arguments in opposition to Defendants' qualified immunity defense.

section, Plaintiff's responses rely on nothing more than "[t]he cases cited in the Complaint . . . to show that the constitutional rights violated were already established in the law." (Doc. 35 at 7.) However, the first of those cases—*Wampler*—is inapplicable to Plaintiff's substantive due process claims because it addresses procedural due process, *Earley*, 451 F.3d at 76 n.1; and, in any event, it does not assist Plaintiff for the reasons already discussed. And the other case—*Brown*—actually undermines the claims at issue. In *Brown*, the Tenth Circuit reversed the district court's denial of qualified immunity on the plaintiff's substantive due process claim for lack of clearly established precedent. *Brown*, 662 F.3d at 1172, 1174.

Instead, Plaintiff argues that Defendants rest on mere denials of the Complaint's allegations and "pinch[] too much on the narrowness of a clearly-established constitutional right, attempting to overly constrict the notice required for a reasonable probation officer." (Doc. 35 at 7.) He also faults Defendants for "not even attempt[ing] to establish that their actions are reasonable" and asserts that "the unreasonableness of the Defendants' actions is plain and undeniable."[16] (*Id.* at 7-8.) Plaintiff's arguments demonstrate a failure on his part to appreciate, and thus attempt to meet, his initial burden to overcome Defendants' properly raised qualified immunity defense, whether in response to a motion to dismiss or for summary judgment. *See Cox*, 800 F.3d at 1245; *Cummings*, 913 F.3d at 1243, 1245; *Brown*, 662 F.3d at 1171-72. In short, Plaintiff has wholly failed to demonstrate that Defendants' conduct violated his clearly established substantive due process rights of which a reasonable officer would have known, and the Court will therefore grant Defendants' motions for qualified immunity on Plaintiff's claims brought on that constitutional basis.

---

[16] In addition, he purports to dispute the properly supported, undisputed material facts in Defendants' MSJ but fails to cite to any record evidence at all, much less any evidence that would create a genuine dispute, in support of his position. (Doc. 64 at 1-2.)

**C.      Defendants are entitled to qualified immunity on Plaintiff's Eighth Amendment claims.**

In Count II, Plaintiff alleges that his "right to be protected from cruel and unusual punishments . . . was violated by the intentional actions of Defendants Hankins and Scogin[.]" (Doc. 1 at ¶ 126.) However, once again, Plaintiff fails to explain the basis for these claims. The Complaint identifies no specific actions taken by each particular Defendant that Plaintiff alleges constitute "cruel and unusual punishments." (*Id.*) This is problematic not only from a pleading standpoint, *see Robbins*, 519 F.3d at 1249, but also because the Eighth Amendment's prohibition against cruel and unusual punishment covers a broad range of conduct. *See, e.g., Graham v. Florida*, 560 U.S. 48, 59 (2010) (explaining that the Eighth Amendment prohibits "the imposition of inherently barbaric punishments under all circumstances[,]" as well as punishments that are disproportionate to the crime); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (explaining that the Eighth Amendment "places restraints on prison officials, who may not, for example, use excessive physical force against prisoners," and "also imposes duties on these officials," for example, to "provide humane conditions of confinement" and "protect prisoners from violence at the hands of other prisoners"); *Hutto v. Finney*, 437 U.S. 678, 685 (1978) (explaining that the Eighth Amendment prohibits penalties "that transgress today's broad and idealistic concepts of dignity, civilized standards, humanity, and decency") (quotation marks omitted). Moreover, the elements necessary to establish an Eighth Amendment claim differ depending on the nature of the claim. *See, e.g., Farmer*, 511 U.S. at 835-36 (explaining that the state-of-mind requirement for establishing an Eighth Amendment claim differs depending on the type of case[17]). As such,

---

[17] For example, the state of mind required to establish a conditions-of-confinement claim is "deliberate indifference," whereas in Eighth Amendment excessive-force cases, the plaintiff "must show that officials applied force maliciously or sadistically for the very purpose of causing harm[.]" *Farmer*, 511 U.S. at 835 (quotation marks and citation omitted); *see DeSpain v. Uphoff*, 264 F.3d 965, 971, 977-78 (10th Cir. 2001) (describing the different elements required to establish "conditions of confinement" and "excessive force" claims under the Eighth Amendment).

Plaintiff's failure to identify the theory on which he brings his Eighth Amendment claims leaves the Court and Defendants ignorant of which actions he contends violated his right to be free from cruel and unusual punishment and unable to meaningfully analyze the claims. *See Robbins*, 519 F.3d at 1249 ("Without allegations sufficient to make clear the 'grounds' on which the plaintiff is entitled to relief, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.") (citation omitted).

The Court acknowledges that, in his MTD Response, Plaintiff contends that "it is cruel and unusual punishment to label someone a 'sexual deviant' and then incarcerate him on the basis of a trumped-up 'violation' of a phantom probation condition that was never lawfully imposed[.]" (Doc. 35 at 3.) However, even assuming *arguendo* that the actions so described could violate the Eighth Amendment, Plaintiff neither presents a Supreme Court or Tenth Circuit case on point nor demonstrates that the weight of authority from other circuits clearly established that the actions described violated Plaintiff's Eighth Amendment rights. (*See generally* Docs. 35, 64.) Indeed, in neither of his responses to Defendants' motions does he cite any caselaw at all in support of his Eighth Amendment claims.  (*Id.*)

Instead, Plaintiff merely relies on *Defendants'* failure to tie their qualified immunity arguments to each of his federal claims individually. (Doc. 35 at 2-4.)  In so arguing, Plaintiff appears to misunderstand how qualified immunity works. Once this defense is raised, whether on a motion to dismiss or for summary judgment, it is the *plaintiff* who bears the burden of establishing that the specific conduct alleged violated clearly established law.[18] *See Cummings*,

---

[18] Thus, in *Cox*, the Tenth Circuit took into account the plaintiff's burden to demonstrate a violation of clearly established law and "elect[ed] . . . to reach the merits of [the defendant's] qualified-immunity arguments based on the absence of clearly established law," even though the defendant had failed to raise those arguments below. 800 F.3d at 1246.

913 F.3d at 1239, 1242-43; *Cox*, 800 F.3d at 1245-46. Here, Plaintiff has wholly failed to meet

that burden with respect to his Eighth Amendment claims. Also, in arguing that Defendants should

have addressed each federal claim separately, Plaintiff ignores the fact that he has asserted the

same vague and conclusory factual basis for all of his federal claims, making it reasonable for

Defendants to challenge them collectively. (Doc. 1 at 23-25.) The Court will therefore grant

Defendants' motions for qualified immunity as to Count II.

**D.      Plaintiff's equal protection claims will be dismissed without prejudice.**

**1.      Applicable Law**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall

'deny to any person within its jurisdiction the equal protection of the laws[.]'" *City of Cleburne,*

*Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "The central purpose of the Equal

Protection Clause . . . is the prevention of official conduct discriminating on the basis of race."

*Washington v. Davis*, 426 U.S. 229, 239 (1976). Such race-based discrimination

> can be shown when: (1) a law or policy explicitly classifies citizens on the basis of
> race; (2) a facially neutral law or policy is applied differently on the basis of race;
> or (3) a facially neutral law or policy that is applied evenhandedly is motivated by
> discriminatory intent and has a racially discriminatory impact.

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 543 (3d Cir. 2011) (citations omitted);

*see generally Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-66 (1977)

(discussing various types of race-based equal protection claims).

Here, Plaintiff appears to allege that, by placing and keeping him on probation prematurely

and imposing sex offender probation conditions on him, Defendants applied facially neutral state

laws and policies governing probation differently because of his race.[19] (Doc. 1 at ¶¶ 59-69.) "The

---

[19] To the extent that Plaintiff also attempts to state an equal protection claim based solely on Defendant Hankins'
alleged race-based comments, the weight of authority from other circuits clearly holds that he cannot, short of alleging
verbal abuse so severe and pervasive that it amounts to racial harassment. *See, e.g., Club Retro, L.L.C. v. Hilton*, 568

Constitution prohibits selective enforcement of the law based on considerations such as race."
*Barwick v. Behnke*, 548 F. App'x 516, 519 (10th Cir. 2013) (alteration omitted). The required
elements for a claim of racially selective enforcement of a facially neutral law or policy "draw on
what the Supreme Court has called 'ordinary equal protection standards.' The plaintiff must
demonstrate that the defendant's actions had a discriminatory effect and were motivated by a
discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir.
2003) (citations omitted); *Barwick*, 548 F. App'x at 519; *Blackwell v. Strain*, 496 F. App'x 836,
839 (10th Cir. 2012); *Starr v. Downs*, 271 F. App'x 746, 748 (10th Cir. 2008); *Jackson v. Loftis*,
189 F. App'x 775, 780 (10th Cir. 2006); *Williamson v. Bernalillo Cnty. Sheriff's Dep't*, 108 F.3d
1389, at *1 (10th Cir. 1997) (unpublished); *see also Alston v. City of Madison*, 853 F.3d 901, 906
(7th Cir. 2017) (to prove race-based equal protection claim, probationer challenging his
assignment to focused deterrence program was required to show discriminatory effect and
discriminatory purpose).

"To establish discriminatory effect, a claimant must show that a similarly situated
individual of another race could have been, but was not" treated as the claimant was treated.
*Germain v. City of Albuquerque*, No. CV 12-929 MV/LFG, 2014 WL 12798271, at *3 (D.N.M.
Jan. 30, 2014) (quoting *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006))
(quotation marks omitted); *Ruff v. Bd. of Regents of Univ. of New Mexico*, No. 16-CV-1140
MCA/LF, 2018 WL 565705, at *7 (D.N.M. Jan. 24, 2018); *see also, e.g.*, *Alston*, 853 F.3d at 906
("To prove discriminatory effect," probationer assigned to focused deterrence program was
required to "show that he was a member of a protected class and that he was treated differently

---

F.3d 181, 213 (5th Cir. 2009); *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007); *Chavez v. Illinois State Police*, 251 F.3d 612, 646 (7th Cir. 2001).  Plaintiff's complaint contains no such allegations.  However, Defendant Hankins' alleged race-based comments can be construed as evidence of a discriminatory purpose. *Chavez*, 251 F.3d at 646.

from a similarly situated member of an unprotected class."). "A plaintiff may make this showing by (1) naming similarly situated individuals of a different race who were treated differently by law enforcement; or (2) providing statistics that address this question." *Johnson v. Holmes*, 782 F. App'x 269, 277 (4th Cir. 2019); *see Blackwell*, 496 F. App'x at 839 ("Statistical evidence can be used to show . . . discriminatory effect[.]").

A defendant's alleged "discriminatory purpose," in turn, "need not be the only purpose, but it must be a motivating factor in the decision" the plaintiff has challenged. *Marshall*, 345 F.3d at 1168; *Starr*, 271 F. App'x at 748–49; *Maxey v. Banks*, 26 F. App'x 805, 808 (10th Cir. 2001). Discriminatory purpose "can be shown by either direct or circumstantial evidence." *Alcaraz-Arellano*, 441 F.3d at 1264; *Villanueva v. Carere*, 85 F.3d 481, 486 (10th Cir. 1996); *Ruff*, 2018 WL 565705 at *7; *see Blackwell*, 496 F. App'x at 844 ("[T]here need not be direct evidence of discriminatory purpose; discriminatory purpose can be shown with purely circumstantial evidence.").

### 2.    Application to Plaintiff's Claims

As explained above, Defendants do not address Plaintiff's equal protection claims in their MSJ. (Doc. 58.)  The Court will therefore consider whether Defendants are entitled to qualified immunity from these claims based solely on their MTD, applying the standards governing Rule 12(b)(6) motions to dismiss.  In accordance with these standards, the Court initially concludes that Plaintiff has failed to state a race-based equal protection claim against Defendant Scogin. In his Complaint, Plaintiff concedes that "Defendant Scogin's motives are not known[.]" (Doc. 1 at ¶ 59.) As such, he has failed to allege that she acted with the requisite discriminatory purpose, and this claim must be summarily dismissed. *Marshall*, 345 F.3d at 1168.

Plaintiff's claim against Defendant Hankins, however, requires further analysis. Plaintiff alleges that Defendant Hankins "repeatedly displayed animosity and contempt for Plaintiff Maho, who is Native American," (Doc. 1 at ¶ 59), "told him 'this is not the reservation,' called him 'Chief,' and referred to meetings as 'pow wows,'" (*id.* at ¶ 61), "acted with an improper motive[] and was motivated by hostility toward Plaintiff Maho," (*id.* at ¶ 63), and "discriminated against Plaintiff Maho on the basis of race[.]" (*Id.* at ¶ 66.) He additionally alleges that "[o]ther similarly-situated individuals" were not treated as he was. (*Id.* at ¶¶ 67-69.) Nevertheless, the Court finds that Plaintiff's allegations fall short of stating a race-based selective enforcement claim against Defendant Hankins for two reasons:  (1) Plaintiff has not alleged that similarly situated persons *of another race* were treated differently; and, (2) Plaintiff has not alleged that *Defendant Hankins* treated similarly situated persons differently.

First, Plaintiff's allegations that "[o]ther similarly-situated individuals" were treated differently are insufficient to support a race-based selective enforcement claim. (*Id.* at ¶¶ 67-69.) Without reading into it facts not alleged, the Complaint never specifies whether the similarly situated persons who were treated differently were Native American or of some other race. *See Assoc. Gen. Contractors of Cal., Inc.*, 459 U.S. at 526 (courts should not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the [law] in ways that have not been alleged"). In the absence of specific, non-conclusory allegations that these individuals were of some other race, Plaintiff's Complaint fails to allege the discriminatory effect clearly required to state a race-based selective enforcement claim in the Tenth Circuit.  *Marshall*, 345 F.3d at 1168; *Germain*, 2014 WL 12798271 at *3; *Ruff*, 2018 WL 565705 at *7.

Second, even if the Court were to construe the Complaint to allege that Plaintiff was treated differently from similarly situated persons of another race, these allegations are still insufficient to

state a claim against Defendant Hankins. Plaintiff's three allegations regarding the treatment of "[o]ther similarly-situated individuals" are stated in the passive voice (*e.g.*, others "were not illegally placed on probation") and do not identify a specific actor who allegedly treated others differently. (Doc. 1 at ¶¶ 67-69.) In particular, Plaintiff never alleges that *Defendant Hankins* treated others differently than she treated him. Nor can the Court assume that Plaintiff's failure to identify Defendant Hankins by name in these allegations is an unintentional omission or inartful pleading, especially when many other allegations specifically identify her as the actor who committed various wrongs. *See Assoc. Gen. Contractors of Cal., Inc.*, 459 U.S. at 526. Absent any specific allegation that *Defendant Hankins* treated similarly situated persons of another race differently and *her* actions had a discriminatory effect, the Complaint fails to state a race-based selective enforcement claim against her. *Marshall*, 345 F.3d at 1168; *see Pahls*, 718 F.3d at 1226 ("[I]t is incumbent upon a plaintiff to identify *specific* actions taken by *particular* defendants in order to make out a viable § 1983 . . . claim.") (emphases in original) (quotation marks omitted).

Finally, to the extent Plaintiff attempts to allege a class-of-one equal protection claim against either Defendant, he fails in that regard as well. "Equal protection jurisprudence has traditionally been concerned with governmental action that disproportionately burdens certain classes of citizens"; however, it also allows "class of one" claims where "a public official, with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215-16 (10th Cir. 2011). To allege a class-of-one equal protection claim, however, a plaintiff must offer more than threadbare, conclusory allegations that other similarly situated individuals were treated differently. *See id.* at 1219-20 (explaining that after *Twombly* and *Iqbal*, it is no longer sufficient in a class-of-one case to generally allege the existence of unidentified comparators). Rather, he

must allege specific facts plausibly suggesting that he and the comparators "are similar in all material respects." *Id.* at 1220; *see also Brown*, 662 F.3d at 1172-73 (holding that plaintiff failed to state a claim where he did not "allege facts about any particular person or persons who were treated differently from him" and instead made only conclusory allegations that he had been treated differently from other similarly situated persons).

In his Complaint, Plaintiff fails to satisfy the *Kansas Penn Gaming* standard, offering nothing more than conclusory allegations that "[o]ther similarly-situated individuals" were treated differently than he was. (Doc. 1 at ¶¶ 67-69.) This is plainly insufficient to state a class-of-one equal protection claim. *Kansas Penn Gaming, LLC*, 656 F.3d at 1220. For the foregoing reasons, the Court finds that Plaintiff has failed to plead facts establishing that either Defendant violated his rights under the Equal Protection Clause. *Brown*, 662 F.3d at 1172-73. The Court will therefore grant Defendants' motion to dismiss Plaintiff's constitutional claims brought on that basis.

## Conclusion

For the reasons stated herein, the Court GRANTS IN PART and DENIES IN PART Defendants' Rule 12(b)(6) Motion to Dismiss Federal Claims Based Qualified Immunity (Doc. 28) and Motion for Summary Judgment Based on Qualified Immunity (Doc. 58). Specifically, the Court ORDERS that:

1. Plaintiff's procedural due process claims against Defendants in their individual capacities are dismissed with prejudice;

2. Plaintiff's substantive due process claims against Defendants in their individual capacities are dismissed with prejudice;

3. Plaintiff's Eighth Amendment claims against Defendants in their individual capacities are dismissed with prejudice; and,

4.    Plaintiff's equal protection claims against Defendants in their individual capacities are dismissed without prejudice. If Plaintiff believes he can remedy the identified deficiencies in Count III of his Complaint to state an equal protection claim, he may file a motion seeking leave to amend his Complaint and attach his proposed Amended Complaint thereto on or before **Friday, May 29, 2020**.

IT IS SO ORDERED.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE